# District of Columbia
# Court of Appeals

No. 14-CF-1051

MYRON O. GRAY,

Appellant,

FILED

MAR **16** 2017

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.                                                                    CF2-19898-13

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia<br>Criminal Division

BEFORE: BECKWITH and MCLEESE, *Associate Judges;* and FARRELL, *Senior Judge*.

**J U D G M E N T**

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that appellant's robbery conviction is reversed. In all other respects, the judgment of the trial court is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: March 16, 2017.

Opinion by Associate Judge Corinne Beckwith.

Concurring opinion by Senior Judge Michael W. Farrell.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-1051

FILED 3/16/17
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

MYRON O. GRAY, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-19898-13)

(Hon. William M. Jackson, Trial Judge)

(Submitted November 6, 2015                          Decided March 16, 2017)

*Sydney J. Hoffmann*, for appellant.

*Vincent H. Cohen*, Acting United States Attorney, *Elizabeth Trosman*, *Suzanne Grealy Curt* and *John Cummings*, Assistant United States Attorneys, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge*.

Opinion for the court by *Associate Judge* BECKWITH.

Opinion by *Senior Judge* FARRELL, concurring, at page 29.

Opinion by *Associate Judge* MCLEESE, concurring in the judgment in part and dissenting in part, at page 30.

BECKWITH, *Associate Judge*: Appellant Myron Gray was convicted at trial of one count of robbery,[1] one count of threats to do bodily harm,[2] and three counts of simple assault.[3] He now appeals his convictions, arguing that the trial court erred in refusing to instruct the jury on second-degree theft[4] (a lesser included offense of robbery), that his conviction for robbery was not supported by sufficient evidence, and that the trial court improperly interfered with his constitutional right to testify in his own defense. For the reasons explained below, we conclude that the trial court should have given the lesser-included-offense instruction and that its failure to do so requires reversal of Mr. Gray's robbery conviction. We reject Mr. Gray's remaining claims of error.

## I.

The evidence at trial showed that at about 9 p.m. on November 9, 2013, Rosalba Hernandez and her two children, seven-year-old E.S. and one-year-old M.M., were at the Ge-Ze Mini Market on Georgia Avenue, along with Martha

---

[1] D.C. Code § 22-2801 (2012 Repl.). All subsequent D.C. Code citations are to the 2012 Replacement volume.

[2] D.C. Code § 22-407.

[3] D.C. Code § 22-404 (a)(1).

[4] D.C. Code §§ 22-3211, -3212 (b).

Hernandez and R.E., Martha's[5] four month-old child. The two youngest children were in strollers. While Rosalba was checking out at the counter, Mr. Gray entered the store. As security-camera footage played at trial showed, Mr. Gray proceeded to engage in a series of bizarre acts[6] before leaving the store about a minute later.

First, after standing by the door for about twenty seconds,[7] apparently observing the two women and their children, Mr. Gray took a couple of steps towards them and reached into R.E.'s stroller. He then pulled his hand out of the stroller and began gesturing and speaking.[8] Next, Mr. Gray, who was wearing a hooded sweatshirt, took off his hood and nodded several times. He held his hands out in front of his body, forming a diamond shape with his thumbs and forefingers, and walked toward E.S. Rosalba pulled E.S. toward her, away from Mr. Gray.

---

[5] We will use first names for clarity as the women, who are sisters-in-law, have the same last name.

[6] Although Mr. Gray has a long history of psychiatric illness and there is reason to suspect that he was unwell during the incident, he clearly asserted a desire not to pursue a defense based on any psychological infirmity at trial.

[7] Rosalba testified that Mr. Gray was "kind of keeping other people from coming in." The surveillance video does not show Mr. Gray actively blocking the door or preventing anybody from entering or leaving.

[8] The testimony is unclear as to what Mr. Gray was saying. Martha testified that Mr. Gray at some point "was asking for [Rosalba's] children, for [her] baby."

Next, Mr. Gray touched E.S., Rosalba, and Martha, in quick succession, on their foreheads with the palm of his hand,[9] and he then pointed at the store's owner, Wondeson Bedane, who was behind the counter. In the surveillance video, the touches appear forceful enough to cause Rosalba and Martha's heads to move back slightly. Martha, in her testimony about the touch, said that Mr. Gray "hit [her] hard," but that he "didn't hit [Rosalba] very hard."[10]

Mr. Gray next reached into M.M.'s stroller. Although the surveillance video does not show the inside of the stroller, both Rosalba and Martha testified that Mr. Gray removed a baby bottle from M.M.'s mouth. Martha testified that Mr. Gray "said not to give the bottle back because if [Rosalba] did [M.M.] would die." Rosalba testified that when she tried to put the bottle back in M.M.'s mouth, Mr. Gray gestured "with his fingers and . . . indicated towards the bottle as if to not put it back in his mouth again."

After Mr. Gray took the bottle out of M.M.'s mouth, he reached over to the counter and picked up Rosalba's wallet.[11] Mr. Gray sat down on a cooler and

---

[9] Rosalba testified that Mr. Gray also struck R.E., but the surveillance video contradicts this testimony.

[10] Mr. Bedane described the touches as "punch[es]."

[11] Martha testified that Mr. Gray "grabbed" the wallet. Rosalba initially

(continued…)

proceeded to rifle through the wallet. After removing some cash—$7, according to Rosalba's testimony at trial—Mr. Gray tossed the wallet back onto the counter, stood up, and walked towards the door. Before exiting the store, Mr. Gray turned around, pointed at the owner, Mr. Bedane, and said something. Mr. Bedane, who said he had seen Mr. Gray in the store before as a customer, testified that Mr. Gray said he would kill Mr. Bedane.[12]

## II.

We begin with Mr. Gray's argument that the trial court erred in refusing to instruct the jury on the lesser included offense of second-degree theft. A trial court is required to grant a defendant's request that the jury be instructed on a lesser included offense of a charged offense "as long as (1) the lesser included offense consists of some, but not every[,] element of the greater offense[] and (2) the evidence is sufficient to support the lesser charge." *(Cedrick) Shuler v. United*

---

(…continued)
testified that Mr. Gray grabbed the wallet from her hands, but this testimony was contradicted by the surveillance video, as Rosalba later conceded.

[12] Mr. Bedane testified that Mr. Gray said these words in a "[v]ery strong voice." Rosalba remembered Mr. Gray's words this way: "[I]t was something like, you're going to die, you need to die, or something like that." Martha remembered Mr. Gray "ma[king] a gesture across his throat" and saying that "that [the owner] was going to die." The surveillance video does not show Mr. Gray making a throat-cutting gesture.

*States*, 98 A.3d 200, 206 (D.C. 2014) (quoting *Jennings v. United States*, 993 A.2d 1077, 1079 (D.C. 2010)); *see also Price v. United States*, 602 A.2d 641, 644 (D.C. 1992); *Wright v. United States*, 505 A.2d 470, 472 (D.C. 1986) ("When counsel ask for a lesser-included offense instruction, it should be freely given."). Here, as it is well-established that second-degree theft is a lesser included offense of robbery, *Leak v. United States*, 757 A.2d 739, 741 (D.C. 2000) (citing *Ulmer v. United States*, 649 A.2d 295, 297 (D.C. 1994)), we turn to the question whether the second condition was satisfied—that is, whether the evidence was sufficient to support the lesser included offense of theft.

Evidence is sufficient to support a lesser included offense when a reasonable jury might, after weighing the evidence, conclude that the defendant is only guilty of the lesser offense and not of the greater offense. *See (Anthony) Shuler v. United States*, 677 A.2d 1014, 1017 (D.C. 1996). "[T]he *weight* of the evidence supporting the instruction is immaterial; as long as a jury could rationally convict on the lesser-included offense after crediting the evidence, the court must give the instruction no matter how inclined it might be to discount that evidence." *Id.* The court is not, however, required to give a lesser-included-offense instruction where only a "bizarre reconstruction" of the evidence would permit the jury to find the defendant guilty of the lesser offense without finding him or her guilty of the

greater offense. *Id.* (quoting *West v. United States*, 499 A.2d 860, 865 (D.C. 1985)).

The parties agree that sufficient evidence was introduced at trial to support a conviction of theft: There was evidence from which a reasonable jury could infer that Mr. Gray took Rosalba's $7 against her will, that "at the time he obtained [the $7], he specifically intended 'either to deprive [Rosalba] of a right to the [$7] or a benefit of the [$7] or to take or make use of the'" $7 for himself "without authority or right," and that the $7 had value. *Nowlin v. United States*, 782 A.2d 288, 291 (D.C. 2001) (quoting Criminal Jury Instructions for the District of Columbia, No. 4.38 (4th ed. 1993)).

The parties disagree, however, over whether a reasonable jury could have found Mr. Gray guilty of theft without also finding him guilty of robbery. Proof of robbery requires proof of the elements of theft plus several aggravating circumstances: (1) the property was taken "from the actual possession of the complainant," (2) the taking was accomplished "using force or violence," and (3) the property was "carried . . . away." *Johnson v. United States*, 756 A.2d 458, 462 (D.C. 2000); *see also Williams v. United States*, 113 A.3d 554, 560–61 (D.C. 2015) ("The elements of robbery are: '(1) a felonious taking, (2) accompanied by an asportation [or carrying away], of (3) personal property of value, (4) from the

person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) *animo furandi* [the intention to steal].'" (quoting *Lattimore v. United States*, 684 A.2d 357, 359 (D.C. 1996)) (alterations in original)). A defendant takes property by force or violence when he or she does so "against resistance or by sudden or stealthy seizure or snatching, or by putting in fear." D.C. Code § 22-2801. In the present case, the jury was not instructed on the "sudden or stealthy seizure or snatching" form of force or violence.[13]

Mr. Gray argued at trial, and argues now on appeal, that a reasonable jury could have found that Mr. Gray assaulted Rosalba, Martha, and E.S. by touching them on the head and placing them in fear and that he committed a theft by taking Rosalba's money, but that the theft—the taking of the $7—was not accomplished by means of Mr. Gray's assaultive conduct. Mr. Gray argues that a reasonable jury could have found that the assaults and the theft were independent acts and that Mr. Gray did not form the specific intent to take Rosalba's property until after

---

[13] The court specifically declined to give this instruction after determining that Mr. Gray's conduct "was not a sudden and stealthy seizure or snatching." The court thus instructed the jury that to find Mr. Gray guilty of robbery, it was required to find that "he used force or violence to take the property by using actual physical force or violence by putting Rosalba Hernandez in fear."

completing his assaults.[14]

We agree that, on the unusual facts revealed chiefly by the surveillance video, the jury rationally could have doubted that Mr. Gray assaulted the women intending to effectuate the theft or that, in taking Rosalba's money, he was conscious of any fear (and lowered resistance) she might have experienced from the assaults. The record reflects several strange actions and omissions by Mr. Gray from which a jury, relying on common sense and everyday experience, could have inferred that the assaults and the theft were not connected but rather resulted from a series of separate, erratic impulses. Mr. Gray signaled cryptically to E.S., removed a bottle from M.M.'s mouth, and used his open palm to strike the complainants on their foreheads without great force. When he finally grabbed the wallet, he did so not immediately after assaulting the complainants, but after

---

[14] Mr. Gray also argues that he was entitled to an instruction on the lesser included offense because a reasonable jury could have found that Rosalba's fear of Mr. Gray was not reasonable. *See Williams*, 113 A.3d at 561 ("[T]he assailant [must have] acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." (quoting *Parks v. United States*, 627 A.2d 1, 5 (D.C. 1993))). According to Mr. Gray, a reasonable jury could have found that Rosalba's fear stemmed not from Mr. Gray's actions but from her perception of Mr. Gray as a "disheveled black man with dreads," "processed through the personal lenses of racial, ethnic, linguistic, and gender differences of the persons involved." We need not address this issue because, as explained below, there are other reasons a rational jury could have found Mr. Gray guilty of theft without finding him guilty of robbery.

reaching into M.M.'s stroller.[15] The jury could think that these actions were such a strange means of effectuating a theft that they were *not* a means of effectuating the theft, and that the subsequent theft of the $7 was instead a spontaneous and unconnected crime of opportunity. This theory is bolstered by the fact that Mr. Gray failed to take anything from the store besides the $7 and that he made no effort to conceal his identity—indeed, he exposed his face by removing his hood—before engaging in illegal conduct in a small store in which he had previously shopped. This theory is not the "bizarre reconstruction" of events that our case law warns us against. *(Anthony) Shuler*, 677 A.2d at 1017; *West*, 499 A.2d at 865. Rather, this is one permissible construction of what were actual bizarre events.

Our dissenting colleague cites as favoring his contrary position cases that hold that "the defendant's violence-or-intimidation acts [need not] be done for the very purpose of the taking of the victim's property," but rather "it is enough that the defendant takes advantage of a situation which he created" by the use of force. *Allen v. State*, 857 A.2d 101, 129 (Md. Ct. Spec. App. 2004) (brackets, internal

---

[15] There was also evidence that Mr. Gray threatened Mr. Bedane as Mr. Gray was walking out the door. Yet a reasonable jury could have found that Mr. Gray uttered this threat after he had "complete and exclusive control" of the property. *Jacobs v. United States*, 861 A.2d 15, 20 (D.C. 2004), *recalled, vacated, and reissued,* 886 A.2d 510 (D.C. 2005).

quotation marks, and citation omitted); *see also* 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 (e), at 191–93 (2d ed. 2016). "Taking advantage of," in this context, naturally means exploiting or seizing the opportunity of a victim's vulnerability created by the violence or intimidation. But as a matter of ordinary language, it is hard to see how that is done without some awareness of the opportunity being exploited. These authorities, in recognizing the equivalency of purposeful use of force and taking advantage of force applied for another (or no) purpose, cannot mean the latter to entail no consciousness by the defendant of the vulnerability he takes advantage of.

Although Judge McLeese sets forth some persuasive arguments for interpreting the "by force or violence" element in D.C. Code § 22-2801 as not including any mental component, *post* at 38–48, our interpretation is more consistent with this court's case law and with the ordinary meaning of the language. Our earlier opinions glossed "by force or violence" as "using force or violence" or "accomplished by force or by putting the victim in fear," *Johnson*, 756 A.2d at 462; *United States v. Bradford*, 482 A.2d 430, 432 (D.C. 1984), suggesting that we understood the statute to require proof of some sort of purposeful employment or at least knowing exploitation of the force or violence, *see United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014) ("[T]he word 'use'

'conveys the idea that the thing used (here, "physical force") has been made the user's instrument.'" (citation omitted)); *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("'[U]se' requires active employment. . . . '[U]se . . . of physical force against the person or property of another'[ ]most naturally suggests a higher degree of intent than negligent or merely accidental conduct.'" (citations omitted) (second ellipsis in original)); *People v. Anderson*, 252 P.3d 968, 971–72 (Cal. 2011) (stating that proof of a defendant's "felonious taking of personal property [from another], . . . accomplished by means of force or fear," requires proof of a purposive connection between the force or fear and the taking (quoting Cal. Penal Code § 211)). And it seems unusual to say that a person took something "by force or violence" if that person had no awareness that the force or violence facilitated the taking. *See Webster's Third New International Dictionary* 307 (2002) (defining "by" as "through the means or instrumentality of"); *but see id.* (defining "by" as "in consequence of" or "as a result of"). This point is apparently so uncontroversial that the government has not argued otherwise in this appeal. Instead, the government implicitly accepts this understanding of "by force or violence" and simply argues that no reasonable jury could fail to find that Mr. Gray purposefully took advantage of Rosalba's fear to take her property: "[I]t would have required a bizarre reconstruction of the evidence for the jury to find that [Mr. Gray's]

decision to grab [Rosalba's] wallet off of the counter, within seconds of hitting her in the head and reaching for her infant, was a mere afterthought."

We are not persuaded by the government's argument that the court's holdings in *Ulmer*, 649 A.2d 295, and *Leak*, 757 A.2d 739, control the present case. In *Ulmer*, the appellant was convicted of armed robbery and felony murder based on evidence that he stabbed the deceased, killing him, and stole the deceased's jewelry. 649 A.2d at 296. The appellant testified at trial that he stabbed the deceased in self-defense and only later decided to steal his property, and he argued that this testimony entitled him to an instruction on the lesser included offense of theft. *Id.* at 296–97. The court rejected the *Ulmer* appellant's argument, explaining that "[e]ven if we accept[ed] appellant's version of the facts . . . , his conduct following the stabbing would still be viewed as a robbery" because the act of removing property from a person's body after killing or incapacitating him or her constitutes a "stealthy seizure."[16]  *Id.* at 297–98. In *Leak*, the

---

[16] The *Ulmer* appellant's argument depended on the premise that he could not be convicted of robbery unless the government proved that he had the intent to steal at the time he attacked the deceased. The court in *Ulmer* did not resolve the question whether the larcenous mental state and assaultive act must concur, as the court instead relied on the stealthy snatching form of robbery. 649 A.2d at 297–98; *cf. Jacobs v. United States*, 861 A.2d 15, 20 (D.C. 2004) (holding that the defendant's use of force to overcome the owner's attempts to take his property *back* after he willingly handed it to the defendant constituted a robbery), *recalled, vacated, and*

(continued…)

government presented evidence that the appellant took the complainant's bicycle while the complainant struggled with a third individual who had "attacked [the complainant] from behind and pulled [him] off his bicycle." 757 A.2d at 741. The appellant, who was charged with robbery, argued that he was entitled to an instruction on theft. *Id.* at 742. He claimed that a reasonable jury could have found that he was not acting jointly with the third individual but instead opportunistically took the bicycle when he saw that the complainant was caught up in the fight. *Id.* The court rejected this argument, explaining that any theft of the bicycle would have constituted a "stealthy snatching." *Id.* at 742–43.

Both *Ulmer* and *Leak* are plainly distinguishable on the ground that they involved the "sudden or stealthy seizure or snatching" form of robbery. The trial court in the present case ruled that the evidence did not support the giving of an instruction on sudden or stealthy seizure or snatching. Thus, even if it were true that the jury could not have found Mr. Gray guilty of theft without also finding him guilty of robbery by stealthy seizure or snatching, this would be immaterial. *Cf. Smith v. United States*, 601 A.2d 1080, 1082 (D.C. 1992) (rejecting the government's argument that there was sufficient evidence of an intent-to-frighten

---

(…continued)
*reissued,* 886 A.2d 510 (D.C. 2005).

assault where the trial court only instructed the jury on attempted-battery assault).[17]

Also, both *Ulmer* and *Leak* are cases in which the defendant, if he committed a theft, must necessarily have consciously chosen to at least *take advantage of* the deceased or complainant's incapacitation, which had been effected through force, in order to take the property. In the present case, by contrast, a reasonable jury could have found that Mr. Gray was not conscious of Rosalba and the others' fear as something that he could exploit to deprive Rosalba of her money.

---

[17] Judge McLeese contends that we fail to adhere to this principle—"that our focus must be on the instructions given to the jury rather than on legal principles not communicated to the jury"—when earlier in our analysis we "rel[y] on the idea that Mr. Gray could be found guilty of robbery only if he either intended or was aware that his use of force or violence would aid in the taking of the victim's property." *Post* at 32. But the jury was instructed that it needed to find that Mr. Gray "*used* force or violence *to take* the property" (emphasis added). Our analysis relies on what we take to be a reasonable understanding of this instruction—namely, that use of force or violence to take property means the conscious employment of (or conscious taking advantage of) force or violence to take the property. *See Webster's Third New International Dictionary* 2524 ("USE is general and indicates any putting to service of a thing, usu. for an intended or fit purpose . . . ."); *see also Castleman*, 134 S. Ct. at 1415; *Leocal*, 543 U.S. at 9. We do not read the court's instruction that "[p]utting . . . in fear without using actual force or physical force can satisfy the requirement of force or violence if the circumstances . . . would in common experience create a reasonable fear of danger" as defining what it means to "use[] force or violence to take . . . property," but instead as explaining that fear-inducing conduct of a certain type can constitute "force or violence" for the purpose of robbery. Thus, none of the trial court's instructions rules out our ordinary-meaning interpretation of the court's instruction that Mr. Gray must have "used force or violence to take the property."

The same reasoning serves to distinguish *Carey v. United States*, 296 F.2d 422 (D.C. Cir. 1961), cited by our dissenting colleague. *Post* at 42. We are also unpersuaded by the dissent's argument that *Leak* stands for the proposition that "'any taking' from the 'immediate actual possession' of the victim 'is a robbery—not simply larceny.'" *Post* at 42 (quoting *Leak*, 757 A.2d at 742–43). Such a principle would completely nullify the "by force or violence" element of robbery. And the *Leak* court never held anything to that effect. We must construe the language quoted from *Leak* based on its context in that opinion. *See Woods v. District of Columbia*, 63 A.3d 551, 555 (D.C. 2013) ("It is well to remember that significance is given to broad and general statements of law only by comparing the facts from which they arise with those facts to which they supposedly apply." (citation omitted)). In context, it is clear that the *Leak* court was merely explaining that a defendant can commit a robbery by sudden or stealthy seizure or snatching "even if the victim is not actually holding, or otherwise attached to[,] the object," and emphasizing the broad contours of this principle—not holding that *any* larcenous taking from the immediate possession of another constitutes a robbery.[18]

---

[18] Judge McLeese contends that *Richardson v. United States*, 403 F.2d 574 (D.C. Cir. 1968)—which unlike *Leak* does not refer to the "sudden or stealthy seizure or snatching" language in the robbery statute—provides support for his position that any theft from the person or immediate possession of another is a

(continued…)

---

(…continued)

robbery. *Post* at 42–43. In *Richardson*, the complainant testified that the defendant had robbed him at gunpoint. 403 F.2d at 575. The defendant denied that he had used a weapon, but "admitted reaching into [the complainant's] wallet and removing $138 without his consent." *Id.* On appeal, the court held that the defendant was not entitled to an instruction on the lesser included offense of theft because "'[f]orce' includes a physical taking of property from the person of another whether or not there is resistance." *Id.* at 576 (citing *Jackson v. United States*, 359 F.2d 260, 262 (D.C. Cir. 1966)). Despite the opinion's broad language, *Richardson* does not support Judge McLeese's position. First, although the court's pared-down statement of facts makes it difficult to understand precisely what the evidence in that case was, it appears that the court was presented with two different factual accounts of the robbery: a forceful taking at gunpoint and a surreptitious act of "reaching into [the complainant's] wallet." *Id.* at 575. The former account, if true, would unquestionably describe a violent taking and the latter would describe a taking by stealthy seizure. Second, the case cited in *Richardson* for the proposition that "'[f]orce' includes a physical taking of property from the person of another" was *Jackson,* which involved the "sudden or stealthy seizure or snatching" form of robbery. *See Richardson*, 403 F.2d at 576; *Jackson*, 359 F.2d at 262. The *Richardson* court's reliance on *Jackson* substantiates our understanding that the defense theory in *Richardson* was that the defendant stealthily seized the cash from the complainant's wallet. Even if our interpretation of *Richardson* is incorrect, there is no disputing that the taking in *Richardson* was from the complainant's person, not merely from the complainant's possession. 403 F.2d at 576. Such a nonconsensual taking, if not done stealthily, will almost always involve some conscious employment of force. In the present case, Mr. Gray did not take the wallet from Rosalba's person but rather took it from the counter nearby.

We recognize that there are passages in opinions other than *Leak* and *Richardson* that, divorced from context, could be read as supporting the broad proposition advanced by the dissent that any theft from a person or his or her immediate possession constitutes a robbery. *See, e.g.*, *Turner v. United States*, 16 F.2d 535, 536 (D.C. Cir. 1926) ("[T]he requirement for force is satisfied within the sense of the statute by an actual physical taking of the property from the person of another, even though without his knowledge and consent, and though the property be unattached to his person."). But we are unaware of any opinion binding on us

(continued…)

*See Leak*, 757 A.2d at 742–43.

The government's reliance on *Dublin v. United States*, 388 A.2d 461 (D.C. 1978), is similarly misplaced. In *Dublin*, the defendant, who was sitting at a bar, "suddenly tried to reach over the counter and demanded that [the complainant, a waitress,] give him the money which was in the cash register. He also commanded her not to look at him." *Id.* at 462. The court affirmed the trial court's decision not to instruct the jury on the lesser included offense of theft, explaining that "larceny (rather than robbery) was not fairly inferable from the evidence." *Id.* at 464. *Dublin* is distinguishable from the present case in two respects. First, the *Dublin* defendant's acts in committing the theft were threatening in and of themselves: The "demand" for money and the "command" not to look at him—the immediate acts by which the taking was effectuated—were implied threats. Thus, no reasonable jury could have found theft without also finding robbery. In contrast, Mr. Gray's aggressive and threatening conduct all occurred before or after the theft—the act of theft itself did not contain the same implied threat as the *Dublin* defendant's did. Second, the *Dublin* defendant's argument for a lesser-included-

---

(…continued)
that actually *holds* that this is the case—which, again, would in effect strike the "by force or violence" element from the robbery statute—or that addresses a fact pattern remotely like the one presently before us.

offense instruction was completely different from Mr. Gray's. He "concede[d] . . . that he never introduced any evidence to create a factual dispute as to" the force or violence element, and instead contended that "because [the complainant] was usually in a state of fear when only a few customers were" present in the restaurant, as was the case when the defendant committed the offense, "the government was required to prove that his actions at the time the offense was committed put her *more* in fear." *Id.* Mr. Gray's argument—that on the unusual facts of his case a reasonable jury could find he was not conscious of the connection between his assaultive conduct and theft—was not raised in *Dublin*, nor could it have been fairly raised in that case, and *Dublin* thus is not controlling.

We now turn to the question whether the trial court's error in failing to instruct the jury on the lesser included offense requires reversal. We will reverse Mr. Gray's conviction if we cannot say "with fair assurance . . . that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *see Spriggs v. United States*, 52 A.3d 878, 886 n.6 (D.C. 2012).

The government argues that the court's denial of Mr. Gray's request for a lesser-included-offense instruction was harmless because Mr. Gray's counsel argued the theory that the assaults and the theft were not connected—the very theory underlying his request for the instruction—to the jury:

> Can you eliminate in your mind the notion that what we're seeing here are two separate, closely related in time events. The touching. The hand gestures. The laying on of the hands followed by the taking of a purse.
>
> Can you eliminate the possibility that the behavior you're seeing from Mr. Gray leading up to the point where he takes the purse off the counter is designed [sic] to put Rosalba Hernandez in such fear that a robbery has taken place?
>
> If you cannot eliminate in your mind that there is a different way to look at these events, one that is not driven by fear, one that is not driven by assumptions, one that is just driven by what you can see with your own eyes.
>
> If you can see that there is another way of looking at this, then you have reasonable doubt. And if you have reasonable doubt, you cannot convict on the charge of robbery.[19]

Because the jury rejected this theory by finding Mr. Gray guilty of robbery, the government argues, a lesser-included-offense instruction would have made no difference.

The government's argument fails to account for the fact that Mr. Gray's

---

[19] At another point in the closing argument, the defense contended that "[t]he Government's theory of this case is that the whole encounter, all the behavior of Mr. Gray leading up to the taking of that purse off the table, is a predicate to a robbery." The defense asked the jury, "[I]s that what really happened here and can you be convinced beyond a reasonable doubt that all of the behavior that you see on the video leading up to the taking of that purse is actually designed to take the purse"?

theory would likely have seemed more plausible to the jury had the trial court implicitly acknowledged its viability by instructing the jury on the lesser included offense. It is possible, moreover, that the jury accepted Mr. Gray's argument in principle but was reluctant to acquit Mr. Gray of robbery, given that he engaged—and concedes he engaged—in indisputably illegal behavior. If so, an instruction on the lesser included offense of theft would have enabled the jury to convict Mr. Gray of a crime it believed was more consistent with the evidence and "eliminate[d] the distortion of the factfinding process that [was] created when the jury [was] forced into an all-or-nothing choice" between guilt of robbery and acquittal. *Spaziano v. Florida*, 468 U.S. 447, 455 (1984), *overruled on unrelated grounds by Hurst v. Florida*, 136 S. Ct. 616 (2016); *see also Schad v. Arizona*, 501 U.S. 624, 646–47 (1991); *State v. Loudermill*, 206 N.E.2d 198, 200 (Ohio 1965) ("[I]f evidence tending to prove a lesser included offense is present and a jury is inhibited by the charge from finding defendant guilty thereof, the collective conscience of that body may too easily be disposed to fabricate the elements of the crime charged . . . . This is speculation at its worst and a natural and probable consequence of a failure to charge on a lesser included offense when evidence of its commission is present.").

The government relies on *Spriggs*, 52 A.3d 878, and *Mitchell v. United*

*States*, 595 A.2d 1010 (D.C. 1991), for the proposition that a failure to give a lesser-included-offense instruction is harmless when conviction for the greater offense evinces a rejection of the defense's theory underlying its request for the instruction. But both *Spriggs* and *Mitchell* are distinguishable because in those cases a jury actually chose a greater offense over a lesser included offense on at least one related charge. This fact, with others, rendered it implausible in those cases that the jury would have chosen a different lesser included offense had the jury been so instructed. *See Spriggs*, 52 A.3d at 886 n.6 (holding that the trial court's failure to give a lesser-included-offense instruction on simple assault for two assault-with-a-dangerous-weapon charges was harmless because the jury rejected the lesser included offense on a related charge of assault with significant bodily injury, showing that the jury credited the complainant's account of the events); *Mitchell*, 595 A.2d at 1011–13 (holding that the failure to give an instruction on the lesser included offense of attempted simple possession was harmless where the court instructed the jury on the lesser included offense of simple possession and the jury found the defendant guilty of the greater offense of possession with intent to distribute); *see also Swann v. United States*, 648 A.2d 928, 935 (D.C. 1994) ("[F]ailure to instruct on a lesser-included offense may be harmless if the jury rejected other lesser-included offenses supported by the

evidence.").

Because the trial court erred in failing to give an instruction on the lesser included offense of theft, and because this error was not harmless, we reverse Mr. Gray's conviction for robbery.[20]

## III.

We next turn to Mr. Gray's argument that the evidence presented at trial was insufficient to support a conviction for robbery.[21] "In reviewing a challenge to sufficiency of the evidence, this court views the evidence in the light most favorable to the government, 'giving full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw

---

[20] Mr. Gray also argues that his assault convictions should merge with his robbery conviction. The government concedes that one of the assaults would merge with the robbery. Because we reverse Mr. Gray's robbery conviction, we do not reach this issue.

[21] Although we are reversing Mr. Gray's conviction for robbery, we must still "address his sufficiency argument because '[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.'" *(Alazajuan) Gray v. United States*, 147 A.3d 791, 805 n.11 (D.C. 2016) (quoting *Burks v. United States*, 437 U.S. 1, 11 (1978)) (alteration in original).

reasonable inferences from basic facts to ultimate facts.'" *Pannell v. United States*, 136 A.3d 54, 56 (D.C. 2016) (quoting *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc)). Evidence is sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivas*, 783 A.2d at 134 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis removed).

Mr. Gray's only argument is that "[t]he record lacks evidence that Mr. Gray's erratic behaviors inside the Ge-Ze Mini Market were purposefully calculated to separate Rosalba Hernandez from her purse." As discussed above, a reasonable jury could have found that Mr. Gray's acts of assault and his theft of Rosalba's $7 were unconnected, random acts. But a reasonable jury could just as well have rejected this theory: A reasonable jury could have inferred from the security video and the complainants' testimony that Mr. Gray intended to put Rosalba in fear or that he consciously exploited this fear in order to grab Rosalba's wallet and take her money. The entire sequence of Mr. Gray's unusual and frightening behavior occurred in less than a minute, and he struck the complainants on their foreheads mere seconds before taking Rosalba's wallet. Further indication that Mr. Gray intended to accomplish his theft of Rosalba's $7 by putting her in fear was provided by the testimony that Mr. Gray threatened to kill another of the

complainants, Mr. Bedane, mere seconds after the theft.

Mr. Gray argues that his case is similar to *Williams*, 113 A.3d 554, in which the court reversed the defendants' robbery convictions for insufficient evidence. In *Williams*, the complainant, a Vietnamese immigrant who spoke little English, was approached by the three defendants—whom the complainant described only as "three black Americans"—outside a Metro station late at night. *Id.* at 556. The defendants said, "What, what, what," and the complainant immediately handed over his wallet because he feared "that they [had] guns and knives." *Id.* The court held that this was insufficient evidence that the defendants accomplished the theft by putting the complainant in fear. *Id.* at 564. The court explained that "there was no showing of an objectively reasonable fear on the part of" the complainant, and that there was no evidence of "'menacing conduct' that would 'engender fear.'" *Id.* at 561, 564 (quoting *Parks v. United States*, 627 A.2d 1, 5 (1993)). The present case is different because there is undisputed evidence that Mr. Gray engaged in a number of potentially frightening acts involving Rosalba, Martha, and their children and that he used actual physical force against Rosalba, Martha, and E.S. A reasonable jury could infer that these acts constituted menacing conduct that would engender fear in a reasonable person.

## IV.

Mr. Gray next claims that the trial court denied him his constitutional right to testify in his own defense by suggesting that evidence that he tested positive for the drug phencyclidine (PCP) after his arrest could be used to cast doubt on his reliability as a witness. The trial court made the purportedly coercive comment during an exchange following the court's denial of Mr. Gray's motion for a lesser-included-offense instruction. Earlier, at the close of the government's case, Mr. Gray had stated that he did not intend to testify, and the court had conducted an on-the-record colloquy[22] with Mr. Gray to confirm that his waiver was knowing and voluntary. After the court ruled on the lesser-included-offense instruction, Mr. Gray's counsel stated that he "need[ed] to revisit Mr. Gray's decision [not to testify] now, in light of the Court's ruling." There was a brief pause in the proceedings, after which the following exchange occurred:

> [COUNSEL]: Your Honor, I think that Mr. Gray anticipated, but my issue was, that we need to put conflicting testimony into the record. He has changed his mind and now wishes to take the stand in his defense.
>
> THE COURT: That's his right. Before we go down

---

[22] *See Boyd v. United States*, 586 A.2d 670 (D.C. 1991).

that road, he needs to—

[COUNSEL]:      I'm glad we have an overnight, Judge.

THE COURT:     Okay. I'm just saying are there other issues that may come up concerning his perception and his ability to accurately perceive the events that occurred that day. I'm talking about his lock-up test, which was positive for PCP.

The next day, Mr. Gray's counsel informed the court that Mr. Gray had decided against testifying, and Mr. Gray confirmed that this was his personal choice in another on-the-record colloquy.

Mr. Gray argues that the trial court's comment about his positive PCP test undermined the validity of his subsequent waiver of his right to testify. Because Mr. Gray did not object to the trial court's comment, we review for plain error.[23] "Under the test for plain error, appellant first must show (1) 'error,' (2) that is 'plain,' and (3) that affected appellant's 'substantial rights.' Even if all three of these conditions are met, this court will not reverse unless (4) 'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"

---

[23] The court in *Arthur v. United States* noted that the test for plain error is in some ways a strange fit for a case involving allegedly coercive comments by a trial court, 986 A.2d 398, 404 n.11 (D.C. 2009), and it is unclear what remedy a trial court could offer after making such comments. But because, as explained *infra*, we find no error, the application of the test in this instance is not dispositive.

*Lowery v. United States*, 3 A.3d 1169, 1173 (D.C. 2010) (quoting *In re D.B.*, 947 A.2d 443, 450 (D.C. 2008)).

We find no error. "Because the right to testify is a fundamental and personal right, it can be waived only by a defendant's voluntary, knowing, and intentional action." *Arthur v. United States*, 986 A.2d 398, 406 (D.C. 2009). Thus, "a trial judge has a responsibility to ensure that the weight of judicial authority does not unduly influence a defendant's exercise of" his or her right to testify. *Id.* at 407. But even if it is true, as Mr. Gray argues, that the trial court's comment was inappropriate because it "essentially suggest[ed] a line of cross-examination to the prosecutor while questioning the wisdom of the defendant's exercise of his right to testify," it is unlikely that the court's stray comment unduly influenced Mr. Gray decision not to testify. The court did not give a "lengthy and intimidating warning." *Webb v. Texas*, 409 U.S. 95, 97 (1972). The court's comment was brief, it was phrased as a question, and after the court made the purportedly improper comment, Mr. Gray had an opportunity to confer with counsel overnight before making the decision to waive his right to testify.

## V.

For the foregoing reasons, we reverse Mr. Gray's conviction for robbery. In

all other respects, the judgment of the trial court is affirmed.

*So ordered.*

FARRELL, *Senior Judge*, concurring:  The surveillance tape at the heart of this prosecution could have exhibited to reasonable jurors a strange, brief spectacle of disjointed actions by appellant supporting the conclusion, in which I concur, that the requested lesser included offense instruction on theft should have been given. In most robbery cases, I dare say in the vast majority of them, there will be no room for reasonable doubt by jurors that, if assaultive acts and theft have been proved, the two are linked by the purposeful nature of the assaults or equivalently the defendant's awareness of the victim's vulnerability to theft created by the assaults.  And that will be true also where, instead of using force or threats, the defendant took the property by sudden or stealthy seizure:  he will be assumed, as a matter of law, to have been aware of the vulnerability of a victim given no opportunity to resist the sudden or stealthy taking.  But this case, marked by the idiosyncratic behavior Judge Beckwith describes, is exceptional, and on its facts I agree that the jury should have been allowed to reject robbery in favor of theft.

MCLEESE, *Associate Judge*, concurring in the judgment in part and dissenting in part:  Although I otherwise concur in the judgment, I respectfully dissent from the court's holding that the trial court committed reversible error by declining to instruct the jury on theft as a lesser-included offense of robbery.  I agree with the court's framing of the issue:  Mr. Gray was entitled to a lesser-included-offense instruction if the jury could reasonably have found him guilty of theft but not robbery.  *Ante* at 6-7.  I disagree, however, with the court's conclusion that the jury could reasonably have found Mr. Gray guilty only of theft based on doubt that Mr. Gray took the victim's property "by force or violence."  *Ante* at 9-19.  In my view, the jury in this case could not reasonably have found Mr. Gray guilty of theft without also finding him guilty of robbery.  I therefore would affirm Mr. Gray's robbery conviction.

## I.

At one point, the court holds that we must address the lesser-included-offense issue in light of the instructions actually given to the jury, rather than in light of legal principles as to which the jury was not instructed.  *Ante* at 14-15.  Specifically, the court acknowledges that robbery can be committed "by sudden or stealthy seizure or snatching."  *Ante* at 14; *accord* D.C. Code § 22-2801 (2016 Supp.).  Because the trial court declined to instruct the jury on that type of robbery,

however, the court treats as "immaterial" the question whether a jury that found Mr. Gray guilty of theft would also reasonably have to find Mr. Gray guilty of robbery by sudden or stealthy seizure or snatching. *Ante* at 8 n.13, 14-15.

In my view, the trial court erred by declining to instruct the jury on the theory of sudden or stealthy seizure or snatching. The trial court's stated reason was that this case did not involve "a sudden *and* stealthy seizure or snatching" (emphasis added). Although I agree that Mr. Gray's actions were not stealthy, the robbery statute applies to "sudden *or* stealthy" seizures or snatchings. D.C. Code § 22-2801 (emphasis added). Thus, if a reasonable jury could have viewed Mr. Gray's seizure of the victim's wallet as sudden, then the trial court ought to have instructed the jury on the theory of sudden or stealthy seizure or snatching. It seems to me that Mr. Gray's seizure of the victim's wallet, as depicted in the videotape of the incident, could quite plausibly be viewed as sudden. In fact, I think it very implausible that a reasonable jury would take any other view. For that reason alone, I would conclude that no reasonable jury, properly instructed, could have found Mr. Gray guilty of theft but not guilty of robbery by sudden seizure. *See generally Turner v. United States*, 57 App. D.C. 39, 40, 16 F.2d 535, 536 (1926) (in discussing robbery by sudden or stealthy seizure or snatching, court states that "the requirement for force is satisfied within the sense of the statute by

an actual physical taking of the property from the person of another, even though without his knowledge and consent, and though the property be unattached to his person").

The court does not address this question, instead holding that our focus must be limited to the instructions given to the jury. *Ante* at 14-15. Although the court cites no direct support, that holding seems to me to be correct, at least where (as here) the defendant did not object to the pertinent instructions. We have said that whether a defendant charged with robbery is entitled to a lesser-included-offense instruction turns on "whether the evidence presented limited the rational conclusion of the fact-finder to either acquittal or conviction on robbery." *Leak v. United States*, 757 A.2d 739, 741 (D.C. 2000). Because a jury could not rationally come to a conclusion on the basis of principles about which the jury was not informed, I agree with the court that we should resolve this case based solely on the instructions given to the jury.

The court, however, does not consistently apply its holding that our focus must be on the instructions given to the jury rather than on legal principles not communicated to the jury. Specifically, the court relies on the idea that Mr. Gray could be found guilty of robbery only if he either intended or was aware that his use of force or violence would aid in the taking of the victim's property. *Ante* at 9-

19. Setting aside for the moment whether the robbery statute actually requires proof of this additional mens rea, the instructions to the jury in this case did not communicate any such principle. By the court's own reasoning, that principle therefore is "immaterial" to whether Mr. Gray was entitled to a lesser-included-offense instruction.

In pertinent part, the robbery instruction in this case was as follows:

> The elements of the offense of robbery, each of which the Government must prove beyond a reasonable doubt, are that: Number one, that the defendant took property from Rosalba Hernandez. Number two, he took the property from the immediate actual possession of Rosalba Hernandez or from Rosalba Hernandez's person. [Number three, he] did so against the will of Rosalba Hernandez. Number four, that he used force or violence to take the property by using actual physical force or violence by putting Rosalba Hernandez in fear. Number five, that he carried the property away. Number six, he took the property without right to it and intending to steal it. And, number seven, the property had some value.
>
> . . . .
>
> Putting Rosalba Hernandez in fear without using actual force or physical force can satisfy the requirement of force or violence if the circumstances, such as threats, by words or gestures, would in common experience create a reasonable fear of danger and cause a person to give up his or her money in order to avoid physical harm.
>
> . . . .
>
> The Government must establish that the defendant had no

> right to take the property and that he intended to steal it. . . . It is necessary that the defendant intended to deprive Rosalba Hernandez of her property and to take it for his own use.

Under these instructions, the jury could not find Mr. Gray guilty of robbery unless it found that Mr. Gray "used force or violence to take the property." The instructions also indicate, however, that "putting [the victim] in fear" could meet the "force or violence" requirement if the defendant's conduct would be sufficiently frightening to a reasonable person. The instructions mention only an intent to steal, and they certainly do not communicate the asserted additional mens rea requirement relied upon by the court: that Mr. Gray must have intended or been aware that his use of force or violence would aid in the taking of the victim's property.

In a footnote, the court takes the view that the robbery instruction in this case can reasonably be understood to require proof not only that Mr. Gray intentionally used force or violence but also that he intended or was aware that his use of force or violence would aid in the taking of the victim's property. *Ante* at 15 n.17. I disagree. In isolation, the phrase "used force or violence" does not indicate whether some form of intent is required beyond the intent to commit the acts that constitute the force and violence at issue. *Cf., e.g.*, *United States v. Pena*, 161 F. Supp. 3d 268, 283 (S.D.N.Y. 2016) (robbery by "intentionally perform[ing]

objectively intimidating actions in the course of unlawfully taking the property of another" would qualify as crime of violence under 18 U.S.C. § 924(c)(3)(A) (requiring that offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another")).  For example, consider a case in which the defendant intentionally punches the victim in the face, the victim falls to the ground, the defendant reaches into the victim's pocket and takes the victim's wallet, and the defendant runs away with the victim's wallet.  As a matter of ordinary language, it would be natural to say that the defendant used force to take the victim's wallet.  That seems to me true even if the defendant truthfully claimed that the punch in the face was not intended to aid in the taking of the victim's property and that the defendant did not realize that the punch in the face in fact aided in the taking of the victim's property.

The court cites authority for the principle that "use" of physical force "most naturally suggests a higher degree of intent than negligent or merely accidental conduct."  *Ante* at 12; *see Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).  I do not disagree, but that is not the point of dispute in this case.  In finding Mr. Gray guilty of assault, the jury found that Mr. Gray "voluntarily and on purpose" deployed force or violence against the victims.  In the court's view, the robbery instructions in this case are reasonably read to require more:  that Mr. Gray's intentionally

assaultive acts were taken with the intent or awareness that they would aid in the taking of the victim's property. *Leocal* does not support a conclusion that the word "used" in the robbery instruction in this case would have communicated to a reasonable juror that Mr. Gray should be acquitted unless he not only intentionally used force that helped him to take the victim's property but also intended or was aware that the force he intentionally used had that effect.

Similarly unpersuasive is the court's reliance on *Webster's Third New International Dictionary*. *Ante* at 15 n.17. That dictionary has numerous definitions of the verb "use." *Webster's Third New International Dictionary* 2523-24 (2002). The court, however, cites none of those definitions. Rather, the court cites a postscript discussing "use" and its synonyms. *Id.* at 2524. The first non-archaic definition of "use" is "to put into action or service," *id.* at 2523, which does not indicate that "use" means not only conscious action but also an awareness of the effects of that action. Nor is such an interpretation of "use" clearly supported by the subsequent discussion of "use" and its synonyms upon which the court relies. In the present case, for example, whether he did so consciously or not, Mr. Gray in fact took advantage of his intentionally assaultive acts to take the victim's property, thereby "putting [his force or violence] to service." *Id.* at 2524.

The Supreme Court has described the term "use" as "elastic," and has

emphasized that the term must be understood in context. *Leocal*, 543 U.S. at 9. Whatever ambiguity the phrase "used force or violence" might have in isolation is resolved in this case by the instruction that "putting the victim in fear" can "satisfy the requirement of force or violence" if Mr. Gray's actions were objectively threatening enough. In light of that instruction, the jury in this case would have had no reason to think that Mr. Gray should be acquitted of robbery unless the jury found not only that Mr. Gray engaged in intentionally assaultive and threatening conduct that aided in the taking of the victim's property, but also that he did so intending or with an awareness that his assaultive and threatening conduct had that effect.

As I read the instructions in this case, the "force or violence" requirement was satisfied if Mr. Gray used force or violence during the robbery and that use of force in fact aided in the taking of the victim's property. Given the instructions and the factual circumstances of this case, a jury that found Mr. Gray guilty of theft and assault could not reasonably have acquitted Mr. Gray of robbery. The videotape of the incident shows that Mr. Gray used force and violence against the victim, and the jury's assault verdict confirms that conclusion. Moreover, I see no reasonable basis upon which a jury might doubt that Mr. Gray's use of force or violence aided in the taking of the victim's property. I therefore would affirm Mr.

Gray's robbery conviction.

## II.

I return now to the issue previously set aside: whether the robbery statute requires that the defendant have intended or been aware that the defendant's force or violence would aid in the taking of the victim's property. For the reasons I have explained, I do not think that we need to resolve that issue in order to decide this case. The court does decide the issue, however, and I therefore address it. I would hold that the robbery statute does not require proof that the defendant have intended or been aware that the use of force or violence would aid in the taking of the victim's property.

First, the language of the robbery statute points against the court's holding. That statute provides that "[w]hoever, by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery." D.C. Code § 22-2801. We have appropriately read into the statute a requirement that the defendant have acted with the specific intent to take the property of another. *United States v. Owens*, 332 A.2d 752, 753 (D.C. 1975) ("[A]lthough the local robbery statute does not mention specific intent, it must be

read as referring to the common law crime of robbery, a necessary element of which is specific intent to take the property of another.") (citations and internal quotation marks omitted). With respect to the requirement of force or violence, the statute by its terms requires that the taking be "by force or violence." D.C. Code § 22-2801. The statute thus does not explicitly impose a requirement that the force or violence have been intentionally deployed, much less that the defendant have intended or been aware that the force or violence would aid the taking. And the term "by" does not suggest an additional mens rea requirement. *See United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010) (in interpreting federal bank-robbery statute, which requires that defendant took money "by force and violence, or by intimidation," court holds that "The intimidation element of bank robbery is satisfied if an ordinary person in the bank teller's position could reasonably infer a threat of bodily harm from the bank robber's words and actions. Intimidation is measured under an objective standard, and, therefore, whether the bank robber intended to intimidate the bank teller is irrelevant.") (citation omitted); *Montgomery v. State,* 47 A.3d 1140, 1157 (Md. Ct. Spec. App. 2012) (in discussing elements of robbery, court holds that, "The determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions. 'By intimidation' means in such a way that would put an

ordinary, reasonable person in fear of bodily harm.") (brackets, ellipses, and internal quotation marks omitted).

According to the court, it would be "unusual to say that a person took something 'by force or violence' if that person had no awareness that the force or violence facilitated the taking." *Ante* at 12. I do not agree. Consider again the hypothetical defendant who punches the victim in the face, knocking the victim to the ground, and then takes the victim's wallet. It seems quite natural to describe that defendant as having taken the victim's wallet by force, whether or not the defendant intended or was aware that the punch in the face would aid in the taking of the victim's property. More generally, we often use the word "by" without implying a mental state. For example, we would say that an unconscious patient traveled by helicopter to the hospital, even though the patient was not aware of what was happening. In support of its view that "by" ordinarily implies a mental state, the court cites two dictionary definitions of "by," but neither definition implies any mental state. *Ante* at 12-13. The court itself appears to acknowledge that one of the definitions it cites -- defining "by" as "in consequence of" or "as a result of" -- contradicts the court's suggestion that "by" in ordinary language implies a mental state. *Id.* Moreover, the court cites no decision from this or any other court interpreting "by" to imply a mental state. The court also does not

address the contrary decisions cited in the preceding paragraph, which take the opposite view in the context of federal and state robbery statutes. In sum, the pertinent materials undermine rather than support the court's statement that its holding "is more consistent . . . with the ordinary meaning of the [statutory] language." *Ante* at 11.

Second, binding authority points against the court's holding in this case. As the court's opinion reflects, our prior decisions variously describe the elements of robbery. *Ante* at 7-8. Focusing on the "force and violence" requirement, we have sometimes used the term "by," which is the term that appears in the statute, *Williams v. United States*, 113 A.3d 554, 560-61 (D.C. 2015), and we have sometimes indicated that the defendant must have "us[ed] force or violence," *Johnson v. United States*, 756 A.2d 458, 462 (D.C. 2000). We have also said that if the defendant's force or violence consists of putting the victim in fear, then "the government must establish some menacing conduct of the accused and his purposeful design to engender fear in the victim." *Williams*, 113 A.3d at 561 (ellipses, brackets, and internal quotation marks omitted). Our cases leave me uncertain as to whether a defendant must always have intentionally deployed force or violence in order to be guilty of robbery. But none of our cases support imposition of a requirement that the defendant have intended or been aware that

intentionally deployed force or violence would aid in the taking of the victim's property.

Rather, our cases are to the contrary. For example, it was long ago settled in this jurisdiction that a defendant can be convicted of robbery even if the defendant's intent to steal arose after the assault on the victim was completed. *Carey v. United States*, 111 U.S. App. D.C. 300, 304-05, 296 F.2d 422, 426-27 (1961). The *Carey* court cited with approval a line of cases holding that "If, as the result of a quarrel, a fight occurs, in which one of the parties is overcome, and the other then, without having formed the intention before the fight began, takes the money of the vanquished one, the offense committed is robbery." *Id.* at 304, 296 F.2d at 426 (internal quotation marks omitted). Thus, the court explained, "larceny from the person" is classified as robbery under the law of the District of Columbia. *Id.* at 406, 296 F.2d at 427. *Carey*'s reasoning is inconsistent with a conclusion that robbery requires the defendant to have intended or been aware that the use of force or violence would aid in the taking of the victim's property. More recently, we have said that "any taking" from the "immediate actual possession" of the victim "is a robbery--not simply larceny." *Leak*, 757 A.2d at 742-43. *See also Richardson v. United States*, 131 U.S. App. D.C. 168, 170, 403 F.2d 574, 576 (1968) (holding that defendant was not entitled to have jury instructed on larceny

as lesser-included offense of robbery, because he forcefully took property from person of victim).

The court suggests that the decisions just cited are limited to sudden or stealthy seizures or snatchings. *Ante* at 13-18. I do not agree with the court's reading of those cases, particularly *Richardson*, which makes no reference at all to sudden or stealthy seizures or snatchings. The court speculates that *Richardson* in fact may have involved a stealthy seizure, *ante* at 17 n.18, but I see no basis in *Richardson* for that speculation. To the contrary, it appears to have been undisputed in *Richardson* that the defendant took money from the victim's person openly, and the factual dispute was whether the defendant used a gun to do so. *Richardson*, 131 U.S. App. D.C. at 169, 403 F.2d at 575. The court also points out that the defendant in *Richardson* took the victim's property from the victim's person, whereas Mr. Gray took the victim's property from a nearby counter. *Ante* at 17 n.18. The court does not explain, however, why it would make sense to impose different mens rea requirements based on that distinction.

Notwithstanding the foregoing authority, the court states that its "interpretation is more consistent with this court's case law." *Ante* at 11. In support of that statement, the court makes a single point: in articulating the "force or violence" element, some of our cases replace the statutory term "by" with

"using" or "accomplished by." *Id.* at 11-12. According to the court, that "suggest[s] that we understood the statute to require proof of some sort of purposeful employment or at least knowing exploitation of the force or violence." *Id.* at 11. I see no basis for the court's speculation. To the contrary, it appears that our shifting terminology, which we have never explained, instead reflects an unexamined assumption that the minor differences in wording have no substantive significance. In that regard, I note that our most recent statement of the elements of robbery uses the statutory term. *See Williams*, 113 A.3d at 560 ("The elements of robbery are: . . . a felonious taking, . . . from the person of another or in his presence, . . . against his will, . . . *by* violence or by putting him in fear . . . .") (emphasis added; internal quotation marks omitted). In my view, the court errs by giving greater weight to speculation about unexplained variations in the wording of our opinions than to clear and considered statements in several of our opinions directly contradicting the approach the court adopts.

Third, in light of the prior decisions in this jurisdiction, it should not be surprising that -- like the instructions given to the jury in this case -- the Standard Jury Instructions for robbery do not reflect the additional mens rea requirement imposed by the court today. Rather, the only mens rea mentioned in the standard robbery instruction is the intent to steal. Criminal Jury Instructions for the District

of Columbia, No. 4.300 (5th ed. 2016). As to "force or violence," the standard instruction requires only that the defendant "used force or violence to take the property," and the standard instruction further explains that "[u]sing actual force or physical violence . . . so as to . . . prevent resistance satisfies the requirement of force or violence." *Id.*

Fourth, the court does not dispute that a defendant is guilty of robbery, without any further mens rea requirement beyond the intent to steal, if the defendant suddenly or stealthily seizes or snatches property from the victim's actual possession. (As I have explained, in my view that is what the evidence and the jury's verdict establish Mr. Gray did in this case.) It seems to me that the same should be true where the defendant commits the robbery through non-sudden seizure. In other words, I do not see why it should matter whether Mr. Gray intended or even realized that his assaultive conduct would aid in the taking of the victim's property. The evidence and the jury's verdict establish that Mr. Gray assaulted the victim, that he almost immediately thereafter seized her wallet from her actual possession, that he walked away with her money, and that he intended to steal her money. In my view, that conduct constitutes robbery under the law of the District of Columbia.

Finally, the substantial weight of authority in other jurisdictions appears to

contradict the additional mens rea requirement that the court imposes upon our robbery statute. *See, e.g.*, *Allen v. State*, 857 A.2d 101, 129 (Md. Ct. Spec. App. 2004) ("[R]obbery does not require that the defendant's violence-or-intimidation acts be done for the very purpose of the taking of the victim's property. Rather, it is enough that the defendant takes advantage of a situation which he created for some other purpose. . . . [S]o long as the force precedes the taking, the intent to steal need not coincide with the force. . . . [I]t is sufficient if there be force followed by a taking with intent to steal as part of the same general occurrence or episode.") (brackets, citations, and internal quotation marks omitted); *State v. Mason*, 403 So. 2d 701, 704 (La. 1981) ("In addition, most jurisdictions have not required that the defendant's acts of violence or intimidation be done for the very purpose of taking the victim's property; rather, it is enough that he takes advantage of a situation which resulted from the prior use of force or intimidation."); *see generally* 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.3(e), at 191-93 (2d ed. 2016) ("[D]oes robbery require that the defendant's violence-or-intimidation acts be done for the very purpose of taking the victim's property, or is it enough that he takes advantage of a situation which he created for some other purpose? The great weight of authority in the earlier cases favors the latter view, holding that under the circumstances it is robbery . . ."; although some modern

statutes contain language supporting contrary conclusion, statutes "which say that the taking must be by force . . . certainly lend themselves to interpretation in accordance with the traditional view that these facts constitute robbery.").

The court states that these illustrative out-of-jurisdiction authorities "cannot mean" to impose robbery liability on all defendants whose intentional use of force or violence in fact aids in the taking of the victim's property. *Ante* at 11. Rather, according to the court, these authorities must be understood to require that the defendant is at least consciously taking advantage of the force or violence used against the victim. *Id.* None of the cited authorities explicitly state that whether the defendant "took advantage" of a prior use of force turns on a subjective inquiry into whether the defendant intended or was aware that the use of force operated to aid in the taking of the victim's property, as opposed to an objective inquiry into whether the defendant's use of force in fact aided in the taking of the victim's property. To the contrary, each of the cited decisions analyzes the relevant issue in objective terms. *See, e.g.*, *Pickar*, 616 F.3d at 825 (objective standard applies in determining whether defendant took property "by intimidation" within meaning of federal bank-robbery statute); *Montgomery,* 47 A.3d at 1157 (objective standard applies in determining whether defendant took property "by intimidation" within meaning of Maryland robbery statute); *Allen*, 857 A.2d at 129 ("[S]o long as the

force precedes the taking, the intent to steal need not coincide with the force. . . . [I]t is sufficient if there be force followed by a taking with intent to steal as part of the same general occurrence or episode.") (brackets, citation, and internal quotation marks omitted); *Mason*, 403 So. 2d at 704 (framing question as whether "the theft [was] accomplished as a result of the defendant's prior acts of aggression").

At bottom, this case strikes me as comparable to *Dublin v. United States*, 388 A.2d 461 (D.C. 1978), in which we upheld a trial court's refusal to instruct the jury on larceny as a lesser-included offense of robbery. In *Dublin*, the defendant was a customer who was seated at the counter in a restaurant. *Id.* at 462. He kept reaching over the counter in an attempt to touch the victim, who was working as a waitress. *Id.* After most of the other customers left, he suddenly tried to reach over the counter, demanded that the victim give him the money in the cash register, and instructed the victim not to look at him. *Id.* The victim was frightened and backed away from the cash register. *Id.* The defendant then removed money from the cash register and left. *Id.* In upholding the trial court's refusal to give a lesser-included offense instruction on larceny, we stated that the defendant "concede[d], as he must," that he had failed to create a factual dispute as to whether his conduct put the victim in fear, so as to meet the "force or violence" requirement of robbery.

*Id.* at 464. If the record in *Dublin* precluded a factual dispute about whether the victim had been put in fear, the same is true in the current case. In *Dublin*, the defendant's frightening conduct consisted of attempts to touch the victim, a demand for money, and a command that the victim refrain from looking at him. In the present case, the defendant's frightening conduct went much further, involving actual assaults upon the victim and others in the store.

The court tries to distinguish *Dublin* in two ways, *ante* at 18-19, but in my view neither proposed distinction is persuasive. First, it is true that the court in *Dublin* rejected the argument that the government was required to prove that the defendant's conduct increased the victim's fear beyond the level of fear that the victim otherwise would have felt. 388 A.2d at 464. But that discussion does not detract from the court's earlier conclusion that the defendant properly conceded that the circumstances did not raise a factual dispute as to whether the victim had been put in fear at the time of the robbery. Second, the court in this case states that the acts in *Dublin* were "threatening in and of themselves," whereas "Mr. Gray's aggressive and threatening conduct all occurred before or after the theft." *Ante* at 16. The court does not explain, however, how the attempted touchings and statements in *Dublin* were more "threatening in and of themselves" than the actual assaults in the present case. It seems to me that the opposite is true. Moreover,

this case and *Dublin* are quite comparable in the temporal relationship between the threatening conduct and the actual taking of money. In both cases, the defendant engaged in threatening conduct just before seizing money from the actual immediate possession of the victim. I thus see no meaningful distinction between this case and *Dublin*.

For the foregoing reasons, I would affirm Mr. Gray's robbery conviction. I respectfully dissent from the court's contrary holding.