Douglas DUBLIN, Appellant,

v.

UNITED STATES, Appellee.

No. 12455.

District of Columbia Court of Appeals.

Argued April 5, 1978.

Decided June 2, 1978.

Lawrence Cohn, Washington, D. C., appointed by this court, for appellant.

Paul L. Knight, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Timothy J. Reardon, III, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, MACK and FERREN, Associate Judges.

GALLAGHER, Associate Judge:

 Appellant Dublin was indicted and tried for one count of robbery (D.C.Code 1973, § 22–2901). After a jury found him guilty of that offense, the trial court sentenced him to a prison term of thirty to ninety months. Appellant urges us to reverse his conviction on the basis of any one or more of three alleged errors, relating to: (1) the refusal of the trial court to instruct the jury on petit larceny (D.C.Code 1973, § 22–2202) as a lesser included offense; (2) the failure of the trial court to conduct a hearing on his motion to suppress evidence seized as the result of an assertedly illegal arrest;[1] and (3) the introduction into evidence of an identification from a lineup photograph. Finding no errors we affirm.

In the late afternoon of August 23, 1976, Hadiata Dumbuya was working by herself as a waitress in the Little Tavern restaurant at 1110 H Street, N.W. At about 4 p. m. there were approximately ten customers in the restaurant. Several of these customers were seated at the counter behind which she was working. One customer in particular kept reaching over the counter in an attempt to touch or "play with" Ms. Dumbuya as she worked. This conduct continued for about twenty minutes.

Seated at the counter near the man who kept trying to touch the waitress was another customer named Thomas Fickling. Mr. Fickling recognized the other man as someone whom he had seen on many occasions over a period of several years in that area of the city.

Between 4:00 and 4:30 p. m. most of the customers left the Little Tavern. The last person to leave before the robbery occurred was Mr. Fickling. When he left, there were only three people remaining inside: the victim, Ms. Dumbuya; the male who had been "playing" and picking at her; and another, unidentified male. Almost immediately thereafter, the aggressive customer suddenly tried to reach over the counter and demanded that Ms. Dumbuya give him the money which was in the cash register. He also commanded her not to look at him. She was scared and not knowing whether he had "anything with him," she backed off from the cash register—"trying to do . . . [her] best to keep away from him." The man then reached into the cash register and removed twenty dollars. After that the two men walked out of the restaurant, and

---

1. Appellant argues that the trial court erred in refusing to conduct an evidentiary hearing with respect to his motion to suppress evidence. The motion rested on the assertion that probable cause did not exist for the issuance of the October 15, 1976 arrest warrant pursuant to which appellant claims he was arrested. Although we agree that the trial court should not "accept the finding of the judge that issued the warrant that there was probable cause" *without review*, as was done here, this arrest was not pursuant to the assertedly defective warrant. At the pretrial motion hearing, the arresting officer testified that he did not "think a warrant had been issued yet [*i. e.*, at the time of the arrest]. I believe it was just that an identification had been made, and the robbery squad . . . [detective] told me that . . . [the same identifying witness] had just made an identification [of appellant for a second time], and if I saw Mr. Dublin, to arrest him." There is no contention, nor could there be, that the officer lacked probable cause to arrest based on the identifications. Consequently, we find this argument to be without merit.

Ms. Dumbuya—too scared to chase them—immediately called the police.

When the police arrived, Mr. Fickling was still standing on the sidewalk about two doors away from the Little Tavern. From the time that he had left the restaurant until the police came, Mr. Fickling had been standing there, talking with a friend, and had the door to the Little Tavern restaurant within his range of vision. About one minute after he left the restaurant, he noticed the man who had been playing with Ms. Dumbuya and the other man come out of the restaurant together and walk up the street in the opposite direction. Mr. Fickling did not see anyone else enter or leave the restaurant during that time.

Mr. Fickling reentered the restaurant after the police arrived and was told by Ms. Dumbuya that the man who was sitting near him at the counter and was "playing with" her was the same man who had just robbed her. Mr. Fickling then told the police that he did not know the man's name, but that he did know the man by face, having seen him on numerous occasions in the neighborhood.

A few days after the robbery, Mr. Fickling told Metropolitan Police Officer Harry D. Hanbury that he had previously seen a photograph of the robber in Officer Hanbury's collection of photographs.[2] On September 1, 1976 Officer Hanbury showed Fickling that collection, and Fickling selected a photograph of appellant. Mr. Fickling identified the man in the picture as the man whom he had seen in the restaurant reaching over the counter toward the waitress and said that the picture represented the same man he had seen over a period of years in the area of the Little Tavern.

On December 9, 1976, Mr. Fickling was shown a photograph of a lineup in which appellant had been standing.[3] Mr. Fickling again selected appellant as the man whom

he had seen bothering the waitress and the man whom he had seen in the neighborhood. Mr. Fickling also identified appellant in court during trial. In addition, Mr. Fickling testified that he had seen appellant in the area of the Little Tavern restaurant on several occasions after the robbery.

Appellant was arrested by Officer Hanbury on October 15, 1976. After being advised of his rights, appellant made one statement to the effect that he frequented that Little Tavern.

Appellant presented an alibi defense through two witnesses: his wife and his mother. His mother testified that he had been at her house on the date of the offense from 2:30 or 2:45 p. m. until after 9 p. m. His wife testified that she had called from her job to his mother's house at about 5:35 p. m. and had talked to him then.

The first issue on appeal is whether the trial court erred in refusing appellant's request to instruct the jury with respect to petit larceny as a lesser included offense of robbery. To determine this issue, we must engage in a two-pronged analysis: (1) "does the lesser offense consist entirely of some but not all of the elements of the greater offense . . . [and (2)] does the evidence justify giving the charge; that is, is there a sufficient evidentiary predicate to support the charge?" *Pendergrast v. United States,* D.C.App., 332 A.2d 919, 924 (1975) (citations omitted).

■ As to the first question, petit larceny is clearly a lesser included offense of robbery. *Lamore v. United States,* 78 U.S. App.D.C. 12, 136 F.2d 766 (1943); *see also United States v. McGill,* 159 U.S.App.D.C. 337, 487 F.2d 1208 (1973) (under an indictment for robbery, the prosecution must prove assault and larceny). Thus we turn to the second question.

2. Mr. Fickling had looked in Officer Hanbury's book of photographs on three or four prior occasions concerning other crimes committed in that area. This book contained approximately 280 photographs on the day that Mr. Fickling viewed it.

3. Detective John Prosek of the Metropolitan Police had a photograph of a lineup on October 21, 1976, in which appellant was standing as a suspect in two armed robberies not related to the robbery in this case.

Appellant argues essentially that the evidence as to the element of "putting [the victim] in fear"[4] was either disputed or so weak that he was entitled to the requested instruction on the lesser included offense as a matter of law. We must determine only whether: (1) there is any evidence which tends to create a factual dispute as to that element, however weak;[5] or (2) despite the absence of conflicting testimony, "the conclusion as to [the] lesser offense is fairly inferable from the evidence, including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part." *United States v. Sinclair*, 144 U.S.App.D.C. 13, 14–15, 444 F.2d 888, 889–90 (1971), *citing Belton v. United States*, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967).

 Appellant concedes that there was sufficient evidence from which a jury could reasonably conclude that appellant had committed a robbery. His position is, however, that a jury could also have reasonably concluded that he was only guilty of petit larceny, had the jury been so instructed. He argues that although the prosecution adduced evidence that Ms. Dumbuya was scared (put in fear) at the time of the offense, Ms. Dumbuya also testified that she was scared whenever she was alone in the Little Tavern with only a few people there. Appellant concedes, as he must,[6] that he never introduced any evidence to create a factual dispute as to this element. Rather, he argues that because Ms. Dumbuya was usually in a state of fear when only a few customers were in the Little Tavern, the government was required to prove that his actions at the time the offense was committed put her *more* in fear. This abstraction is so divorced from reality that it hardly merits discussion.[7] Suffice it to say, to support a robbery charge the government need not establish the victim was not in a state of fear before the robber approached.[8] The court correctly concluded a lesser offense instruction was not warranted as larceny (rather than robbery) was not fairly inferable from the evidence. *See Lightfoot v. United States*, D.C.App., 378 A.2d 670, 673 (1977); *Brown v. United States*, D.C.App., 349 A.2d 467, 469 (1975); *United States v. Whitaker*, 144 U.S.App. D.C. 344, 347 & n. 8, 447 F.2d 314, 317 & n. 8 (1971).

Appellant also argues that Mr. Fickling should not have been allowed to testify concerning his identification of appellant in a photograph of a lineup. Appellant's argument centers on the trial court's refusal to suppress the lineup photo on which Mr. Fickling's identification was based. He claims that the government breached its agreement with him that the lineup would be used for one offense only—an offense other than the one at issue here.[9] Appel-

4. The prosecution is required to prove as one of the elements of robbery that the offense was committed "by force or violence, whether against resistance, or by sudden or stealthy seizure or snatching, or by putting in fear . . . ." D.C.Code 1973, § 22–2901. Here the only evidence pertaining to force or violence which was adduced by the prosecution related to the element of "putting in fear."

5. *See Pendergrast v. United States, supra* at 925; *Belton v. United States*, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967).

6. His defense at trial relied on an alibi. The fact that his theory of defense was inconsistent with his request for an instruction on the lesser included offense is no bar to our consideration of whether the trial court erred. As said by the court in *Womack v. United States*, 119 U.S. App.D.C. 40, 40, 336 F.2d 959, 959 (1964), "a defendant is entitled to an instruction on any issue *fairly raised by the evidence,* whether or not consistent with the defendant's testimony or the defense trial theory." (Emphasis added.)

7. If this sort of reasoning were adopted, it would be difficult to convict defendants for nighttime street robberies or bank robberies. In some areas, people are normally somewhat in fear while walking the street at night, just as some bank tellers may be in fear at their jobs.

8. This is, of course, not to say that the government is relieved of its burden of proving that the victim was put in fear by the defendant at the time of the robbery.

9. This controversy focuses upon the following language of the Superior Court lineup order: "ordered that the defendant's counsel Mr. Dale attend and represent the defendant at the above-ordered lineup. Mr. Dale has approved

lant asserts that the fruit of the breached agreement should be excluded for reasons of fairness to him and to prevent a shadow from being cast upon the good faith and honesty of prosecution officials.

The order, with its specifically added language, was signed by both an Assistant United States Attorney and a Superior Court judge. The prosecution contends that the typed-in addition has no legal effect and in no way signifies that an agreement was reached between the prosecutor and defense counsel that the government would use this lineup only in the prosecution of the two armed robbery charges on which appellant had already been presented, and not in any other prosecutions.

 We do not understand what underlaid the government's asserted promise to conduct the lineup only for the offenses set forth in the lineup order. Regardless of whether appellant's counsel had withheld his consent, or objected, to the placement of his client in a lineup for the offense at issue here—the Little Tavern robbery—the court would almost certainly have approved the inclusion of such a lineup in the order for a lineup relating to the other offenses. This is so because a court may order an individual not even under arrest to appear in a lineup upon a showing of reasonable suspicion not amounting to probable cause to arrest for that offense. *Wise v. Murphy,* D.C.App., 275 A.2d 205 (1971) (en banc). Moreover, the court may order a person then under judicial authority, for whom probable cause to arrest exists for one offense, to be placed in a lineup for other offenses "for which there is less than probable cause to arrest." *Adams v. United States,* 130 U.S.App.D.C. 203, 208, 399 F.2d 574, 579 (1968), *cert. denied,* 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710 (1969). Here, if

appellant Dublin had objected to being placed in a lineup for the Little Tavern offense, the court could have properly overridden his objection and ordered his presence in such a lineup. This is so because there was probable cause to arrest Dublin for that offense at the time the lineup was conducted and probable cause to arrest [10] is more than is required under either the standard of *Wise v. Murphy, supra,* or *Adams v. United States, supra,* in order to secure a person's presence in a lineup for that offense.

Furthermore, the fact that the government admits that "[t]he prosecutor, unaware at the time of the potential robbery charge in this case, told counsel that the October 21 lineup would only be for the two offenses on which appellant was originally presented," [11] does not necessarily indicate that this was an agreement. Nor do the words in the order concerning defense counsel's limited approval establish such an agreement. On the other hand, we cannot be certain that there was no agreement.

 We consider that "[i]n order to maintain the integrity of their office, prosecutors must be held to 'meticulous standards of both promise and performance . . . .' *Correale v. United States,* 479 F.2d 944, 947 (1st Cir. 1973) . . . ." *Green v. United States,* D.C.App., 377 A.2d 1132, 1134 (1977). We also think that generally bargains made by a prosecutor should be strictly enforced. Appellant does not assert he gave up anything, however, substantial or trivial, in return for the puzzling statement in the court order. In fact, at the suppression hearing defense counsel stated his awareness of the judicial authority to order his client into a lineup for other offenses.[12] On this record, we are unable to conclude there was a breach of such sub-

---

this order because it is for this offense only." (Emphasis added to underscore that portion of the order typed in specially.)

**10.** In fact, we have already stated, *supra* note 1, that the initial arrest in this case was effectu-

ated by Officer Hanbury with probable cause to believe that appellant had committed the Little Tavern offense.

**11.** Brief for Appellee at 13.

**12.** Tr. at 15.

stance as to require us to take hold of the situation under our supervisory power.[13]

Accordingly, appellant's conviction is

*Affirmed.*

---

**13.** Leaving that aside, the testimony complained of was merely cumulative and there was other, strong identification testimony.