Opinion for the court by Associate Judge Beckwith.
Opinion by Senior Judge Farrell, concurring, at page 391.
Opinion by Associate Judge McLeese, concurring in the judgment in part and dissenting in part, at pages 391-92.
Beckwith, Associate Judge:
Appellant Myron Gray was convicted at trial of one count of robbery,[1] one count of threats to do bodily harm,[2] and three counts of simple assault.[3] He now appeals his convictions, arguing that the trial court erred in refusing to instruct the jury on second-degree theft[4] (a lesser included offense of robbery), that his conviction for robbery was not supported by sufficient evidence, and that the trial court improperly interfered with his constitutional right to testify in his own defense. For the reasons explained below, we conclude that the trial court should have given the lesser-included-offense instruction and that its failure to do so requires reversal of Mr. Gray’s robbery conviction. We reject Mr. Gray’s remaining claims of error.
I.
The evidence at trial showed that at about 9 p.m. on November 9, 2013, Rosalba Hernandez and her two children, seven-year-old E.S. and one-year-old M.M., were at the Ge-Ze Mini Market on Georgia Avenue, along with Martha Hernandez and R.E., Martha’s[5] four month-old child. The two youngest children were in strollers. While Rosalba was checking out at the counter, Mr. Gray entered the store. As security-camera footage played at trial showed, Mr. Gray proceeded to engage in a series of bizarre acts[6] before leaving the store about a minute later.
First, after standing by the door for about twenty seconds,[7] apparently observing the two women and their children, Mr. Gray took a couple of steps towards them and reached into R.E.’s stroller. He then pulled his hand out of the stroller and began gesturing and speaking.[8] Next, Mr. Gray, who was wearing a hooded sweatshirt, took off his hood and nodded several times. He held his hands out in front of his body, forming a diamond shape with his thumbs and forefingers, and walked to *381 ward E.S. Rosalba pulled E.S. toward her, away from Mr. Gray.
Next, Mr. Gray touched E.S., Rosalba, and Martha, in quick succession, on their foreheads with the palm of his hand,[9] and he then pointed at the store’s owner, Wondeson Bedane, who was behind the counter. In the surveillance video, the touches appear forceful enough to cause Rosalba and Martha’s heads to move back slightly. Martha, in her testimony about the touch, said that Mr. Gray “hit [her] hard,” but that he “didn’t hit [Rosalba] very hard.”[10]
Mr. Gray next reached into M.M.’s stroller. Although the surveillance video does not show the inside of the stroller, both Rosalba and Martha testified that Mr. Gray removed a baby bottle from M.M.’s mouth. Martha testified that Mr. Gray “said not to give the bottle back because if [Rosalba] did [M.M.] would die.” Rosalba testified that when she tried to put the bottle back in M.M.’s mouth, Mr. Gray gestured “with his fingers and ... indicated towards the bottle as if to not put it back in his mouth again.”
After Mr. Gray took the bottle out of M.M.’s mouth, he reached over to the counter and picked up Rosalba’s wallet.[11] Mr. Gray sat down on a cooler and proceeded to rifle through the wallet. After removing some cash — $7, according to Ro-salba’s testimony at trial — Mr. Gray tossed the wallet back onto the counter, stood up, and walked towards the door. Before exiting the store, Mr. Gray turned around, pointed at the owner, Mr. Bedane, and said something. Mr. Bedane, who said he had seen Mr. Gray in the store before as a customer, testified that Mr. Gray said he would kill Mr. Bedane.[12]
II.
We begin with Mr. Gray’s argument that the trial court erred in refusing to instruct the jury on the lesser included offense of second-degree theft. A trial court is required to grant a defendant’s request that the jury be instructed on a lesser included offense of a charged offense “as long as (1) the lesser included offense consists of some, but not every[,] element of the greater offense[] and (2) the evidence is sufficient to support the lesser charge.” (Cedrick) Shuler v. United States, 98 A.3d 200, 206 (D.C. 2014) (quoting Jennings v. United States, 993 A.2d 1077, 1079 (D.C. 2010)); see also Price v. United States, 602 A.2d 641, 644 (D.C. 1992); Wright v. United States, 505 A.2d 470, 472 (D.C. 1986) (“When counsel ask for a lesser-included offense instruction, it should be freely given.”). Here, as it is well-established that second-degree theft is a lesser included offense of robbery, Leak v. United States, 757 A.2d 739, 741 (D.C. 2000) (citing Ulmer v. United States, 649 A.2d 295, 297 (D.C. 1994)), we turn to the question whether the second condition was satisfied — that is, whether the evi *382 dence was sufficient to support the lesser included offense of theft.
Evidence is sufficient to support a lesser included offense when a reasonable jury might, after weighing the evidence, conclude that the defendant is only guilty of the lesser offense and not of the greater offense. See (Anthony) Shuler v. United States, 677 A.2d 1014, 1017 (D.C. 1996). “[T]he weight of the evidence supporting the instruction is immaterial; as long as a jury could rationally convict on the lesser-included offense after crediting the evidence, the court must give the instruction no matter how inclined it might be to discount that evidence.” Id. The court is not, however, required to give a lesser-included-offense instruction where only a “bizarre reconstruction” of the evidence would permit the jury to find the defendant guilty of the lesser offense without finding him or her guilty of the greater offense. Id. (quoting West v. United States, 499 A.2d 860, 865 (D.C. 1985)).
The parties agree that sufficient evidence was introduced at trial to support a conviction of theft: There was evidence from which a reasonable jury could infer that Mr. Gray took Rosalba’s $7 against her will, that “at the time he obtained [the $7], he specifically intended ‘either to deprive [Rosalba] of a right to the [$7] or a benefit of the [$7] or to take or make use of the’ ” $7 for himself “without authority or right,” and that the $7 had value. Nowlin v. United States, 782 A.2d 288, 291 (D.C. 2001) (quoting Criminal Jury Instructions for the District of Columbia, No. 4.38 (4th ed. 1993)).
The parties disagree, however, over whether a reasonable jury could have found Mr. Gray guilty of theft without also finding him guilty of robbery. Proof of robbery requires proof of the elements of theft plus several aggravating circumstances: (1) the property was taken “from the actual possession of the complainant,” (2) the taking was accomplished “using force or violence,” and (3) the property was “earned ... away.” Johnson v. United States, 756 A.2d 458, 462 (D.C. 2000); see also Williams v. United States, 113 A.3d 554, 560-61 (D.C. 2015) (“The elements of robbery are: ‘(1) a felonious taking, (2) accompanied by an asportation [or carrying away], of (3) personal property of value, (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) animo furandi [the intention to steal].’ ” (quoting Lattimore v. United States, 684 A.2d 357, 359 (D.C. 1996)) (alterations in original)). A defendant takes property by force or violence when he or she does so “against resistance or by sudden or stealthy seizure or snatching, or by putting in fear.” D.C. Code § 22-2801. In the present case, the jury was not instructed on the “sudden or stealthy seizure or snatching” form of force or violence.[13]
Mr. Gray argued at trial, and argues now on appeal, that a reasonable jury could have found that Mr. Gray assaulted Rosalba, Martha, and E.S. by touching them on the head and placing them in fear and that he committed a theft by taking Rosalba’s money, but that the theft — the taking of the $7 — was not accomplished by means of Mr. Gray’s assaultive conduct. Mr. Gray argues that a reasonable jury could have found that the assaults and the theft were independent acts and that Mr. *383 Gray did not form the specific intent to take Rosalba’s property until after completing his assaults.[14]
We agree that, on the unusual facts revealed chiefly by the surveillance video, the jury rationally could have doubted that Mr. Gray assaulted the women intending to effectuate the theft or that, in taking Rosalba’s money, he was conscious of any fear (and lowered resistance) she might have experienced from the assaults. The record reflects several strange actions and omissions by Mr. Gray from which a jury, relying on common sense and everyday experience, could have inferred that the assaults and the theft were not connected but rather resulted from a series of separate, erratic impulses. Mr. Gray signaled cryptically to E.S., removed a bottle from M.M.’s mouth, and used his open palm to strike the complainants on their foreheads without great force. When he finally grabbed the wallet, he did so not immediately after assaulting the complainants, but after reaching into M.M.’s stroller.[15] The jury could think that these actions were such a strange means of effectuating a theft that they were not a means of effectuating the theft, and that the subsequent theft of the $7 was instead a spontaneous and unconnected crime of opportunity. This theory is bolstered by the fact that Mr. Gray failed to take anything from the store besides the $7 and that he made no effort to conceal his identity — indeed, he exposed his face by removing his hood— before engaging in illegal conduct in a small store in which he had previously shopped. This theory is not the “bizarre reconstruction” of events that our case law warns us against. (Anthony) Shuler, 677 A.2d at 1017; West, 499 A.2d at 865. Rather, this is one permissible construction of what were actual bizarre events.
Our dissenting colleague cites as favoring his contrary position cases that hold that “the defendant’s violence-or-intimidation acts [need not] be done for the very purpose of the taking of the victim’s property,” but rather “it is enough that the defendant takes advantage of a situation which he created” by the use of force. Allen v. State, 158 Md.App. 194, 857 A.2d 101, 129 (2004) (brackets, internal quotation marks, and citation omitted); see also 3 Wayne R. LaFave, Substantive Criminal Law § 20.3 (e), at 191-93 (2d ed. 2016). “Taking advantage of,” in this context, naturally means exploiting or seizing the opportunity of a victim’s vulnerability created by the violence or intimidation. But as a matter of ordinary language, it is hard to see how that is done without some awareness of the opportunity being exploited. These authorities, in recognizing the equiv *384 alency of purposeful use of force and taking advantage of force applied for another (or no) purpose, cannot mean the latter to entail no consciousness by the defendant of the vulnerability he takes advantage of.
Although Judge McLeese sets forth some persuasive arguments for interpreting the “by force or violence” element in D.C. Code § 22-2801 as not including any mental component, post at 395-99, our interpretation is more consistent with this court’s case law and with the ordinary meaning of the language. Our earlier opinions glossed “by force or violence” as “using force or violence” or “accomplished by force or by putting the victim in fear,” Johnson, 756 A.2d at 462; United States v. Bradford, 482 A.2d 430, 432 (D.C. 1984), suggesting that we understood the statute to require proof of some sort of purposeful employment or at least knowing exploitation of the force or violence, see United States v. Castleman, — U.S. —, 134 S.Ct. 1405, 1415, 188 L.Ed.2d 426 (2014) (“[T]he word ‘use’ ‘conveys the idea that the thing used (here, “physical force”) has been made the user’s instrument.’ ” (citation omitted)); Leocal v. Ashcroft, 543 U.S. 1, 9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (“ ‘[U]se’ requires active employment.... ‘[U]se ... of physical force against the person or property of another’[ ]most naturally suggests a higher degree of intent than negligent or merely accidental conduct.’” (citations omitted) (second ellipsis in original)); People v. Anderson, 51 Cal.4th 989, 125 Cal.Rptr.3d 408, 252 P.3d 968, 971-72 (2011) (stating that proof of a defendant’s “felonious taking of personal property [from another], ... accomplished by means of force or fear,” requires proof of a purposive connection between the force or fear and the taking (quoting Cal. Penal Code § 211)). And it seems unusual to say that a person took something “by force or violence” if that person had no awareness that the force or violence facilitated the taking. See Webster’s Third New International Dictionary 307 (2002) (defining “by” as “through the means or instrumentality of’); but see id. (defining “by” as “in consequence of’ or “as a result of’). This point is apparently so uncontroversial that the government has not argued otherwise in this appeal. Instead, the government implicitly accepts this understanding of “by force or violence” and simply argues that no reasonable jury could fail to find that Mr. Gray purposefully took advantage of Rosalba’s fear to take her property: “[I]t would have required a bizarre reconstruction of the evidence for the jury to find that [Mr. Gray’s] decision to grab [Rosalba’s] wallet off of the counter, within seconds of hitting her in the head and reaching for her infant, was a mere afterthought.”
We are not-persuaded by the government’s argument that the court’s holdings in Ulmer, 649 A.2d 295, and Leak, 757 A.2d 739, control the present case. In Ul-mer, the appellant was convicted of armed robbery and felony murder based on evidence that he stabbed the deceased, killing him, and stole the deceased’s jewelry. 649 A.2d at 296. The appellant testified at trial that he stabbed the deceased in self-defense and only later decided to steal his property, and he argued that this testimony entitled him to an instruction on the lesser included offense of theft. Id. at 296-97. The court rejected the Ulmer appellant’s argument, explaining that “[e]ven if we accepted] appellant’s version of the facts ..., his conduct following the stabbing would still be viewed as a l-obbery” because the act of removing property from a person’s body after killing or incapacitating him or her constitutes a “stealthy *385 seizure.”[16] Id. at 297-98. In Leak, the government presented evidence that the appellant took the complainant’s bicycle while the complainant struggled with a third individual who had “attacked [the complainant] from behind and pulled [him] off his bicycle.” 757 A.2d at 741. The appellant, who was charged with robbery, argued that he was entitled to an instruction on theft. Id. at 742. He claimed that a reasonable jury eould have found that he was not acting jointly with the third individual but instead opportunistically took the bicycle when he saw that the complainant was caught up in the fight. Id. The court rejected this argument, explaining that any theft of the bicycle would have constituted a “stealthy snatching.” Id. at 742-43.
Both Ulmer and Leak are plainly distinguishable on the ground that they involved the “sudden or stealthy seizure or snatching” form of robbery. The trial court in the present case ruled that the evidence did not support the giving of an instruction on sudden or stealthy seizure or snatching. Thus, even if it were true that the jury could not have found Mr. Gray guilty of theft without also finding him guilty of robbery by stealthy seizure or snatching, this would be immaterial. Cf. Smith v. United States, 601 A.2d 1080, 1082 (D.C. 1992) (rejecting the government’s argument that there was sufficient evidence of an intent-to-frighten assault where the trial court only instructed the jury on attempted-battery assault).[17] Also, both Ulmer and Leak are cases in which the defendant, if he committed a theft, must necessarily have consciously chosen to at least take advantage of the deceased or complainant’s incapacitation, which had been effected through force, in order to take the property. In the present case, by contrast, a reasonable jury could have found that Mr. Gray was not conscious of *386 Rosalba and the others’ fear as something that he could exploit to deprive Rosalba of her money.
The same reasoning serves to distinguish Carey v. United States, 296 F.2d 422 (D.C. Cir. 1961), cited by our dissenting colleague. Post at 396. We are also unpersuaded by the dissent’s argument that Leak stands for the proposition that “ ‘any taking’ from the ‘immediate actual possession’ of the victim ‘is a robbery — not simply larceny.’ ” Post at 396 (quoting Leak, 757 A.2d at 742-43). Such a principle would completely nullify the “by force or violence” element of robbery. And the Leak court never held anything to that effect. We must construe the language quoted from Leak based on its context in that opinion. See Woods v. District of Columbia, 63 A,3d 551, 555 (D.C. 2013) (“It is well to remember that significance is given to broad and general statements of law only by comparing the facts from which they arise with those facts to which they supposedly apply.” (citation omitted)). In context, it is clear that the Leak court was merely explaining that a defendant can commit a robbery by sudden or stealthy seizure or snatching “even if the victim is not actually holding, or otherwise attached to[,] the object,” and emphasizing the broad contours of this principle — not holding that any larcenous taking from the immediate possession of another constitutes a robbery.[18] See Leak, 757 A.2d at 742-43.
*387 The government’s reliance on Dublin v. United States, 388 A.2d 461 (D.C. 1978), is similarly misplaced. In Dublin, the defendant, who was sitting at a bar, “suddenly tried to reach over the counter and demanded that [the complainant, a waitress,] give him the money which was in the cash register. He also commanded her not to look at him.” Id. at 462. The court affirmed the trial court’s decision not to instruct the jury on the lesser included offense of theft, explaining that “larceny (rather than robbery) was not fairly inferable from the evidence.” Id. at 464. Dublin is distinguishable from the present case in two respects. First, the Dublin defendant’s acts in committing the theft were threatening in and of themselves: The “demand” for money and the “command” not to look at hint— the immediate acts by which the taking was effectuated — were implied threats. Thus, no reasonable jury could have found theft without also finding robbery. In contrast, Mr. Gray’s aggressive and threatening conduct all occurred before or after the theft — the act of theft itself did not contain the same implied threat as the Dublin defendant’s did. Second, the Dublin defendant’s argument for a lesser-included-offense instruction was completely different from Mr. Gray’s. He “concede[d] ... that he never introduced any evidence to create a factual dispute as to” the force or violence element, and instead contended that “because [the complainant] was usually in a state of fear when only a few customers were” present in the restaurant, as was the case when the defendant committed the offense, “the government was required to prove that his actions at the time the offense was committed put her more in fear.” Id. Mr. Gray’s argument — that on the unusual facts of his case a reasonable jury could find he was not conscious of the connection between his assaultive conduct and theft — was not raised in Dublin, nor could it have been fairly raised in that case, and Dublin thus is not controlling.
We now turn to the question whether the trial court’s error in failing to instruct the jury on the lesser included offense requires reversal. We will reverse Mr. Gray’s conviction if we cannot say “with fair assurance ... that the judgment was not substantially swayed by the error.” Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); see Spriggs v. United States, 52 A.3d 878, 886 m6 (D.C. 2012).
The government argues that the court’s denial of Mr. Gray’s request for a lesser-included-offense instruction was harmless because Mr. Gray’s counsel argued the theory that the assaults and the theft were not connected — the very theory underlying his request for .the instruction — to the jury:
Can you eliminate in your mind the notion that what we’re seeing here are two separate, closely related in time events. The touching. The hand gestures. The laying on of the hands followed by the taking of a purse. ■
Can you eliminate the possibility that the behavior you’re seeing from Mr. Gray leading up to the point where he takes the purse off the counter is designed [sic] to put Rosalba Hernandez in such fear that a robbery has taken place?
If you cannot eliminate in your mind that there is a different way to look at these events, one that is not driven by fear, one that is not driven by assump *388 tions, one that is just driven by what you can see with your own eyes.
If you can see that there is another way of looking at this, then you have reasonable doubt. And if you have reasonable doubt, you cannot convict on the charge of robbery.[19]
Because the jury rejected this theory by finding Mr. Gray guilty of robbery, the government argues, a lesser-ineluded-of-fense instruction would have made no difference.
The government’s argument fails to account for the fact that Mr. Gray’s theory would likely have seemed more plausible to the jury had the trial court implicitly acknowledged its viability by instructing the jury on the lesser included offense. It is possible, moreover, that the jury accepted Mr. Gray’s argument in principle but was reluctant to acquit Mr. Gray of robbery, given that he engaged — and concedes he engaged — in indisputably illegal behavior. If so, an instruction on the lesser included offense of theft would have enabled the jury to convict Mr. Gray of a crime it believed was more consistent with the evidence and “eliminate[d] the distortion of the factfinding process that [was] created when the jury [was] forced into an all-or-nothing choice” between guilt of robbery and acquittal. Spaziano v. Florida, 468 U.S. 447, 455, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), overruled on unrelated grounds by Hurst v. Florida, — U.S. —, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016); see also Schad v. Arizona, 501 U.S. 624, 646-47, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); State v. Loudermill, 2 Ohio St.2d 79, 206 N.E.2d 198, 200 (1965) (“[I]f evidence tending to prove a lesser included offense is present and a jury is inhibited by the charge from finding defendant guilty thereof, the collective conscience of that body may too easily be disposed to fabricate the elements of the crime charged.... This is speculation at its worst and a natural and probable consequence of a failure to charge on a lesser included offense when evidence of its commission is present.”).
The government relies on Spriggs, 52 A.3d 878, and Mitchell v. United States, 595 A.2d 1010 (D.C. 1991), for the proposition that a failure to give a lesser-included-offense instruction is harmless when conviction for the greater offense evinces a rejection of the defense’s theory underlying its request for the instruction. But both Spriggs and Mitchell are distinguishable because in those cases a jury actually chose a greater offense over a lesser included offense on at least one related charge. This fact, with others, rendered it implausible in those cases that the jury would have chosen a different lesser included offense had the jury been so instructed. See Spriggs, 52 A.3d at 886 n.6 (holding that the trial court’s failure to give a lesser-included-offense instruction on simple assault for two assault-with-a-dangerous-weapon charges was harmless because the jury rejected the lesser included offense on a related charge of assault with significant bodily injury, showing that the jury credited the complainant’s account of the events); Mitchell, 595 A.2d at 1011— 13 (holding that the failure to give an instruction on the lesser included offense of attempted simple possession was harmless where the court instructed the jury on *389 the lesser included offense of simple possession and the jury found the defendant guilty of the greater offense of possession with intent to distribute); see also Swann v. United States, 648 A.2d 928, 935 (D.C. 1994) (“[Fjailure to instruct on a lesser-included offense may be harmless if the jury rejected' other lesser-included offenses supported by the evidence.”).
Because the trial court erred in failing to give an instruction on the lesser included offense of theft, and because this error was not harmless, we reverse Mr. Gray’s conviction for robbery.[20]
III.
We next turn to Mr. Gray’s argument that the evidence presented at trial was insufficient to support a conviction for robbery.[21] “In reviewing a challenge to sufficiency of the evidence, this court views the evidence in the light most favorable to the government, ‘giving full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.’ ” Pannell v. United States, 136 A.3d 54, 56 (D.C. 2016) (quoting Rivas v. United States, 783 A.2d 125, 134 (D.C. 2001) (en bane)). Evidence is sufficient if “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Rivas, 783 A.2d at 134 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis removed).
Mr. Gray’s only argument is that “[tjhe record lacks evidence that Mr. Gray’s erratic behaviors inside the Ge-Ze Mini Market were purposefully calculated to separate Rosalba Hernandez from her purse.” As discussed above, a reasonable jury could have found that Mr. Gray’s acts of assault and his theft of Rosalba’s $7 were unconnected, random acts. But a reasonable jury could just as well have rejected this theory: A reasonable jury could have inferred from the security video and the complainants’ testimony that Mr. Gray intended to put Rosalba in fear or that he consciously exploited this fear in order to grab Rosalba’s wallet and take her money. The entire sequence of Mr. Gray’s unusual and frightening behavior occurred in less than a minute, and he struck the complainants on their foreheads mere seconds before taking Rosalba’s wallet. Further indication that Mr. Gray intended to accomplish his theft of Rosalba’s $7 by putting her in fear was provided by the testimony that Mr. Gray threatened to kill another of the complainants, Mr. Bedane, mere seconds after the theft.
Mr. Gray argues that his ease is similar to Williams, 113 A.3d 554, in which the court reversed the defendants’ robbery convictions for insufficient evidence. In Williams, the complainant, a Vietnamese immigrant who spoke little English, was approached by the three defendants— whom the complainant described only as “three black Americans” — outside a Metro station late at night. Id. at 556. The defendants said, “What, what, what,” and the *390 complainant immediately handed over his wallet because he feared “that they [had] guns and knives.” Id, The court held that this was insufficient evidence that the defendants accomplished the theft by putting the complainant in fear. Id. at 564. The court explained that “there was no showing of an objectively reasonable fear on the part of’ the complainant, and that there was no evidence of “ ‘menacing conduct’ that would ‘engender fear.’ ” Id. at 561, 564 (quoting Parks v. United States, 627 A.2d 1, 5 (1993)). The present case is different because there is undisputed evidence that Mr. Gray engaged in a number of potentially frightening acts involving Rosalba, Martha, and their children and that he used actual physical force against Rosalba, Martha, and E.S. A reasonable jury could infer that these acts constituted menacing conduct that would engender fear in a reasonable person.
IV.
Mr. Gray next claims that the trial court denied him his constitutional right to testify in his own defense by suggesting that evidence that he tested positive for the drug phencyclidine (POP) after his arrest could be used to cast doubt on his reliability as a witness. The trial court made the purportedly coercive comment during an exchange following the court’s denial of Mr. Gray’s motion for a lesser-included-offense instruction, Earlier, at the close of the government’s case, Mr. Gray had stated that he did not intend to testify, and the court had conducted an on-the-record colloquy[22] with Mr. Gray to confirm that his waiver was knowing and voluntary. After the court ruled on the lesser-included-offense instruction, Mr. Gray’s counsel stated that he “need[ed] to revisit Mr. Gray’s decision [not to testify] now, in light of the Court’s ruling.” There was a brief pause in the proceedings, after which the following exchange occurred:
[COUNSEL]: Your Honor, I think that Mr. Gray anticipated, but my issue was, that we need to put conflicting testimony into the record. He has changed his mind and now wishes to take the stand in his defense.
THE COURT: That’s his right. Before we go down that road, he needs to—
[COUNSEL]: I’m glad we have an overnight, Judge.
THE COURT: Okay. I’m just saying are there other issues that may come up concerning his perception and his ability to accurately perceive the events that occurred that day. I’m talking about his lock-up test, which was positive for PCP.
The next day, Mr. Gray’s counsel informed the court that Mr. Gray had decided against testifying, and Mr. Gray confirmed that this was his personal choice in another on-the-record colloquy.
Mr. Gray argues that the trial court’s comment about his positive PCP test undermined the validity of his subsequent waiver of his right to testify. Because Mr. Gray did not object to the trial court’s comment, we review for plain error.[23] “Under the test for plain error, appellant first must show (1) ‘error,’ (2) that *391 is ‘plain,’ and (3) that affected appellant’s ‘substantial rights.’ Even if all three of these conditions are met, this court will not reverse unless (4) ‘the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.’ ” Lowery v. United States, 3 A.3d 1169, 1173 (D.C. 2010) (quoting In re D.B., 947 A.2d 443, 450 (D.C. 2008)).
We find no error. “Because the right to testify is a fundamental and personal right, it can be waived only by a defendant’s voluntary, knowing, and intentional action.” Arthur v. United States, 986 A.2d 398, 406 (D.C. 2009). Thus, “a trial judge has a responsibility to ensure that the weight of judicial authority does not unduly influence a defendant’s exercise of’ his or her right to testify. Id, at 407. But even if it is true, as Mr. Gray argues, that the trial court’s comment was inappropriate because it “essentially suggested] a line of cross-examination to the prosecutor while questioning the wisdom of the defendant’s exercise of his right to testify,” it is unlikely that the court’s stray comment unduly influenced Mr. Gray decision not to testify. The court did not give a “lengthy and intimidating warning.” Webb v. Texas, 409 U.S. 95, 97, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). The court’s comment was brief, it .was phrased as a question, and after the court made the purportedly improper comment, Mr. Gray had an opportunity to confer with counsel overnight before making the decision to waive his right to testify-
Y.
For the foregoing reasons, we reverse Mr. Gray’s conviction for robbery. In all other respects, the judgment of the trial court is affirmed.

So ordered,

. D.C. Code § 22-2801 (2012 Repl.). All subsequent D.C. Code citations are to the 2012 Replacement volume.

. D.C. Code § 22-407.

. D.C. Code § 22-404 (a)(1).

. D.C. Code §§ 22-3211, -3212 (b).

. We will use first names for clarity as the women, who are sisters-in-law, have the same last name.

. Although Mr. Gray has a long history of psychiatric illness and there is reason to suspect that he was unwell during the incident, he clearly asserted a desire not to pursue a defense based on any psychological infirmity at trial.

. Rosalba testified that Mr. Gray was "kind of keeping other people from coming in.” The surveillance video does not show Mr. Gray actively blocking the door or preventing anybody from entering or leaving,

. The testimony is unclear as to what Mr. Gray was saying. Martha testified that Mr. Gray at some point "was asking for [Rosal-ba’s] children, for [her] baby.”

. Rosalba testified that Mr. Gray also struck R.E., but the surveillance video contradicts this testimony.

. Mr. Bedane described the touches as "punch[es].'’

. Martha testified that Mr. Gray "grabbed” the wallet. Rosalba initially testified that Mr. Gray grabbed the wallet from her hands, but this testimony was contradicted by the surveillance video, as Rosalba later conceded.

.Mr. Bedane testified that Mr. Gray said these words in a "[v]ery strong voice.” Rosal-ba remembered Mr. Gray’s words this way: "[I]t was something like, you’re going to die, you need to die, or something like that.” Martha remembered Mr. Gray ”ma[king] a gesture across his throat” and saying that "that [the owner] was going to die.” The surveillance video does not show Mr. Gray making a throat-cutting gesture.

. The court specifically declined to give this instruction after determining that Mr. Gray’s conduct "was not a sudden and stealthy seizure or snatching.” The court thus instructed the jury that to find Mr. Gray guilty of robbery, it was required to find that "he used force or violence to take the property by using actual physical force or violence by putting Rosalba Hernandez in fear.”

. Mr. Gray also argues that he was entitled to an instruction on the lesser included offense because a reasonable jury could have found that Rosalba’s fear of Mr. Gray was not reasonable. See Williams, 113 A.3d at 561 ("[T]he assailant [must have] acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility.” (quoting Parks v. United States, 627 A.2d 1, 5 (D.C. 1993))). According to Mr. Gray, a reasonable jury could have found that Rosalba’s fear stemmed not from Mr. Gray’s actions but from her perception of Mr. Gray as a "disheveled black man with dreads,” "processed through the personal lenses of racial, ethnic, linguistic, and gender differences of the persons involved.” We need not address this issue because, as explained below, there are other reasons a rational jury could have found Mr. Gray guilty of theft without finding him guilty of robbery.

. There was also evidence that Mr. Gray threatened Mr. Bedane as Mr. Gray was walking out the door. Yet a reasonable jury could have found that Mr. Gray uttered this threat after he had "complete and exclusive control” of the property. Jacobs v. United States, 861 A.2d 15, 20 (D.C. 2004), recalled, vacated, and reissued, 886 A.2d 510 (D.C. 2005).

. The Ulmer appellant's argument depended on the premise that he could not be convicted of robbery unless the government proved that he had the intent to steal at the time he attacked the deceased. The court in Ulmer did not resolve the question whether the larcenous mental state and assaultive act must concur, as the court instead relied on the stealthy snatching form of robbery. 649 A.2d at 297-98; cf. Jacobs v. United States, 861 A.2d 15, 20 (D.C. 2004) (holding that the defendant's use of force to overcome the owner’s attempts to take his property back after he willingly handed it to the defendant constituted a robbery), recalled, vacated, and reissued, 886 A.2d 510 (D.C. 2005).

. Judge McLeese contends that we fail to adhere to this principle — "that our focus must be on the instructions given to the jury rather than on legal principles not communicated to the jury” — when earlier in our analysis we “rel[y] on the idea that Mr. Gray could be found guilty of robbety only if he either intended or was aware that his use of force or violence would aid in the taking of the victim’s property.” Post at 392-93. But the jury was instructed that it needed to find that Mr. Gray “used force or violence to take the property” (emphasis added). Our analysis relies on what we take to be a reasonable understanding of this instruction — namely, that use of force or violence to take property means the conscious employment of (or conscious taking advantage of) force or violence to take the property. See Webster’s Third New International Dictionary 2524 ("USE is general and indicates any putting to service of a thing, usu. for an intended or fit purpose ....”); see also Castleman, 134 S.Ct. at 1415; Leocal, 543 U.S. at 9, 125 S.Ct. 377. We do not read the court’s instruction that “[pjutting ... in fear without using actual force or physical force can satisfy the requirement of force or violence if the circumstances ... would in common experience create a reasonable fear of danger” as defining what it means to “use[] force or violence to take ... property,” but instead as explaining that fear-inducing conduct of a certain type can constitute “force or violence” for the purpose of robbery. Thus, none of the trial court's instructions rules out our ordinary-meaning interpretation of the court’s instruction that Mr. Gray must have “used force or violence to take the property.”

. Judge McLeese contends that Richardson v. United States, 403 F.2d 574 (D.C. Cir. 1968) — which unlike Leak does not refer to the "sudden or stealthy seizure or snatching” language in the robbery statute — provides support for his position that any theft from the person or immediate possession of another is a robbery. Post at 396-97. In Richardson, the complainant testified that the defendant had robbed him at gunpoint, 403 F.2d at 575. The defendant denied that he had used a weapon, but "admitted reaching into [the complainant’s] wallet and removing $138 without his consent.” Id. On appeal, the court held that the defendant was not entitled to an instruction on the lesser included offense of theft because " ‘[fjorce' includes a physical talcing of property from the person of another whether or not there is resistance.” Id. at 576 (citing Jackson v. United States, 359 F.2d 260, 262 (D.C. Cir. 1966)). Despite the opinion’s broad language, Richardson does not support Judge McLeese's position. First, although the court’s pared-down statement of facts makes it difficult to understand precisely what the evidence in that case was, it appears that the court was presented with two different factual accounts of the robbery: a forceful taking at gunpoint and a surreptitious act of “reaching into [the complainant’s] wallet.” Id. at 575, The former account, if true, would unquestionably describe a violent taking and the latter would describe a taking by stealthy seizure. Second, the case cited in Richardson for the proposition that " ‘[fjorce’ includes a physical taking of property from the person of another” was Jackson, which involved the "sudden or stealthy seizure or snatching” form of robbery. See Richardson, 403 F.2d at 576; Jackson, 359 F.2d at 262. The Richardson court’s reliance on Jackson substantiates our understanding that the defense theory in Richardson was that the defendant stealthily seized the cash from the complainant’s wallet. Even if our interpretation of Richardson is incorrect, there is no disputing that the taking in Richardson was from the complainant’s person, not merely from the complainant's possession. 403 F.2d at 576. Such a noncon-sensual taking, if not done stealthily, will almost always involve some conscious employment of force. In the present case, Mr. Gray did not take the wallet from Rosalba’s person but rather took it from the counter nearby,
We recognize that there are passages in opinions other than Leak and Richardson that, divorced from context, could be read as supporting the broad proposition advanced by the dissent that any theft from a person or his or her immediate possession constitutes a robbery. See, e.g., Turner v. United States, 16 F.2d 535, 536 (D.C. Cir. 1926) (“[T]he requirement for force is satisfied within the sense of the statute by an actual physical taking of the property from the person of another, even though without his knowledge and consent, and though the property be unattached to his person.”). But we are unaware of any opinion binding on us that actually *387 holds that this is the case — which, again, would in effect strike the “by force or violence” element from the robbery statute — or that addresses a fact pattern remotely like the one presently before us.

. At another point in the closing argument, the defense contended that "[t]he Government’s theory of this case is that the whole encounter, all the behavior of Mr. Gray leading up to the taking of that purse off the table, is a predicate to a robbery.” The defense asked the jury, "[I]s that what really happened here and can you be convinced beyond a reasonable doubt that all of the behavior that you see on the video leading up to the taking of that purse is actually designed to take the purse”?

. Mr. Gray also argues that his assault convictions should merge with his robbery conviction. The government concedes that one of the assaults would merge with the robbery. Because we reverse Mr. Gray's robbery conviction, we do not reach this issue.

. Although we are reversing Mr. Gray's conviction for robbery, we must still "address his sufficiency argument because ‘[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.’ ” (Alazajuan) Gray v. United States, 147 A.3d 791, 805 n.11 (D.C. 2016) (quoting Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)) (alteration in original).

. See Boyd v. United States, 586 A.2d 670 (D.C. 1991).

. The court in Arthur v. United States noted that the test for plain error is in some ways a strange fit for a case involving allegedly coercive comments by a trial court, 986 A.2d 398, 404 n.11 (D.C. 2009), and it is unclear what remedy a trial court could offer after making such comments. But because, as explained infra, we find no error, the application of the test in this instance is not dispositive.