*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CF-1054

RUBIN DELPHONSO HOLMAN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-CF3-003958)

(Hon. Sean C. Staples, Trial Judge)

(Submitted November 21, 2024　　　　　　　　Decided May 1, 2025[*])

*Nancy E. Allen* was on the brief for appellant.

*Matthew M. Graves*, United States Attorney at the time of submission, *Chrisellen R. Kolb*, *Elizabeth H. Danello*, *Kraig Ahalt*, *Raha Mokhtari*, and *Steven B. Snyder*, Assistant United States Attorneys, were on the brief for appellee.

Before MCLEESE, DEAHL, and HOWARD, *Associate Judges*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellant's unopposed motion to publish.

MCLEESE, *Associate Judge*: Appellant Rubin Delphonso Holman was convicted of robbery, assault with intent to rob (AWIR), and simple assault. We reverse Mr. Holman's convictions for simple assault and AWIR because they merge into Mr. Holman's robbery conviction. We hold that the evidence was sufficient to support Mr. Holman's robbery conviction. We therefore affirm Mr. Holman's robbery conviction and remand the case for entry of a new judgment and commitment order reflecting only the robbery conviction.

## I. Factual Background

The evidence at trial included the following. At the time of the incident at issue, Domini Dotson was riding on a Metro train. Mr. Holman and his friend, Mr. Black, were riding on the same Metro car. Ms. Dotson did not know Mr. Holman or Mr. Black. Mr. Black sat in the seat across the aisle from Ms. Dotson while Mr. Holman sat in a seat diagonally across the aisle from Ms. Dotson.

Mr. Black passed Mr. Holman a bottle of lubricant. The two men then began masturbating while staring at Ms. Dotson. At the next stop, Ms. Dotson got out of that Metro car and boarded the next car. Ms. Dotson also called Metro and reported the two men.

As Ms. Dotson was calling in the incident, she noticed that Mr. Holman had stood up and was watching her through the window in the door that separated the Metro cars. While Ms. Dotson waited for the Metro police to arrive, she "snuck a picture" of Mr. Holman with her cell phone so that she "could show it to the police." Immediately after Ms. Dotson took the photograph, Mr. Holman entered her Metro car through the door. Mr. Holman said something to Ms. Dotson, but she could not hear him because she was listening to music through headphones.

Ms. Dotson asked Mr. Holman why he was following her, and Mr. Holman responded, "[B]*tch, I'll take your phone or b*tch, I'll slap you." During this exchange, Ms. Dotson's phone was sitting in her lap, and her hand was on top of the phone.

Mr. Holman reached for Ms. Dotson's phone, but Ms. Dotson "snatched [the phone] back" before Mr. Holman could grab it. Mr. Holman then slapped Ms. Dotson across her face and punched Ms. Dotson in the eye and on the side of her head. Ms. Dotson tried to defend herself by kicking her legs and swinging her arms. Another man on the train also intervened by jumping on Mr. Holman's back and placing him in a headlock. During the fight, Ms. Dotson's phone was thrown across the train.

As the fight continued, Mr. Black entered the Metro car and pretended to have a gun. This caused Ms. Dotson and the bystander to stop fighting Mr. Holman, and Ms. Dotson and the bystander began backing up. As they were backing up, Mr. Holman retrieved Ms. Dotson's phone from the floor of the Metro car.

After the train arrived at a station, Mr. Holman and Mr. Black left the train. Ms. Dotson followed the two men off of the train in order to get her phone back. Metro police officers were already on the platform. The officers asked Mr. Holman to take a seat so that they could further investigate, but instead, Mr. Holman walked away from the officers. The officers were able to stop Mr. Holman, and as one of the officers attempted to restrain Mr. Holman, Mr. Holman removed Ms. Dotson's phone from his pocket and threw the phone onto the Metro tracks. A station supervisor later retrieved Ms. Dotson's phone from the tracks and returned the phone to Ms. Dotson. As a result of the fight, Ms. Dotson had scratches on her chest and face and received a concussion.

## II. Merger

Mr. Holman argues that his convictions for simple assault and AWIR merge with his conviction for robbery. We agree.

We decide "a claim of merger of convictions de novo to determine whether there has been a violation of the Double Jeopardy Clause of the Fifth Amendment." *Kaliku v. United States*, 994 A.2d 765, 787 (D.C. 2010) (emphasis and internal quotation marks omitted). To determine if two convictions merge, the court applies the test set out in *Blockburger v. United States*, 284 U.S. 299 (1932), which looks at "whether each [offense] requires proof of a fact which the other does not." *Id.* at 304. "In applying the test, we compare the statutorily []specified elements of the offenses involved, and not the facts of the case at hand." *Simms v. United States*, 634 A.2d 442, 447 (D.C. 1993).

We have already held that simple assault merges with AWIR. *Hartley v. United States*, 117 A.3d 1035, 1039 (D.C. 2015). We thus accept the United States' concession on that point.

The United States argues that robbery and AWIR do not merge because AWIR requires proof of assault, whereas robbery does not, and robbery requires (among other things) proof that property was taken. We have already held, however, that robbery does require proof of assault. *See, e.g.*, *Norris v. United States*, 585 A.2d 1372, 1374 (D.C. 1991) (in concluding that armed robbery and assault with a dangerous weapon merge, court holds that "all of the elements of assault with a dangerous weapon are included in armed robbery"; "Put another way, it is

impossible to commit armed robbery without first having committed assault with a dangerous weapon."); *In re Z.B.*, 131 A.3d 351, 355 (D.C. 2016) ("[I]t is not possible to commit robbery without also committing assault . . . .").

The United States lays out an argument in favor of a contrary conclusion, based on the idea that robbery can be committed by stealthy snatching that does not constitute an assault. We do not consider this argument because as a division of this court, we are bound by the holding of *Norris*. *See generally, e.g.*, *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[N]o division of this court will overrule a prior decision of this court . . . .") (footnote omitted). We recognize that *Norris* involved armed robbery and assault with a dangerous weapon, whereas this case involves robbery and AWIR. Nevertheless, we held in *Norris* that robbery requires proof of assault, and we are not free to adopt a contrary approach in the present case. *See, e.g.*, *Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996) ("As a general rule, the principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.") (internal quotation marks and emphasis omitted).

### III.  Sufficiency of the Evidence

We review claims of insufficiency of the evidence "in the light most favorable to sustaining the conviction, giving deference to the factfinder's ability to weigh the evidence and make credibility and factual determinations." *Peery v. United States*, 849 A.2d 999, 1001 (D.C. 2004) (citation omitted).  "An appellant making a claim of evidentiary insufficiency bears the heavy burden of showing that the prosecution offered no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt." *Dorsey v. United States*, 154 A.3d 106, 112 (D.C. 2017) (internal quotation marks omitted).

Robbery requires "the intention to steal." *Alleyne v. United States*, 327 A.3d 472, 480 (D.C. 2024) (brackets and internal quotation marks omitted).  Mr. Holman argues that there was insufficient evidence to prove he intended to steal the phone.  This court recently clarified that the intent requirement is met either when a defendant takes property in order "to permanently deprive" the owner of the property or when a defendant "take[s] property with the purpose to return it only upon the satisfaction of a condition . . . [the defendant has] no right to impose." *Id.* at 481 (brackets and internal quotation marks omitted).

There was sufficient evidence for a reasonable jury to find that Mr. Holman intended to steal Ms. Dotson's phone.  When Mr. Holman approached Ms. Dotson,

he demanded that she give him the phone or he would slap her. Mr. Holman then reached for Ms. Dotson's phone and used force when Ms. Dotson prevented him from taking the phone. After the altercation, Mr. Holman put Ms. Dotson's phone in his pocket and walked off the train without returning it. Mr. Holman then threw the phone onto the Metro tracks only after the police officers were trying to detain him. A reasonable juror could infer from these facts that at the moment Mr. Holman took the phone, he intended to permanently deprive Ms. Dotson of the phone. *See, e.g.*, *Alleyne*, 327 A.3d at 482-83 (sufficient evidence of intent to rob where defendant forcefully took wallet to receive payment and disposed of wallet after realizing victim could not pay).

Mr. Holman contends that he took the phone with the intent to force Ms. Dotson to delete the picture that she had taken. There was no evidence, however, directly supporting that contention, and the factfinder was not required to infer that Mr. Holman's objective was limited to forcing Ms. Dotson to delete photos from the phone. Moreover, as we recently held in *Alleyne*, the intent to steal can be established by evidence that the defendant took property with the intent to "to return [the property] only upon the satisfaction of a condition . . . [the defendant has] no right to impose." 327 A.3d at 481 (internal quotation marks omitted). Thus, the

evidence would be sufficient even if a factfinder could only have inferred that Mr. Holman took the phone to force Ms. Dotson to delete the picture.

Finally, Mr. Holman relies on our decision in *Gray v. United States*, 155 A.3d 377 (D.C. 2017). We do not view *Gray* as supporting Mr. Holman's argument in the present case. In *Gray*, the defendant engaged in "a series of bizarre acts" before taking money from the complainant. *Id.* at 380-81. We acknowledged that "a reasonable jury could have found that [the defendant's] acts of assault and his theft . . . were unconnected, random acts." *Id.* at 389. We held, however, that the evidence was sufficient to support the defendant's conviction for robbery. *Id.* at 389-90. As we explained, "a reasonable jury could just as well have rejected this theory: A reasonable jury could have inferred [from the evidence] . . . that [the defendant] intended to put [the complainant] in fear" so that he could take her property. *Id.* at 389.

For the foregoing reasons, we reverse Mr. Holman's convictions for simple assault and AWIR, we affirm his conviction for robbery, and we remand the case for the trial court to enter a new judgment and commitment order reflecting only the robbery conviction. Because the trial court imposed concurrent sentences, there is no need for resentencing. *E.g.*, *Smith v. United States*, 306 A.3d 67, 73 (D.C. 2023).

*So ordered.*